1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

11

JUSTIN FLEEMAN,

12    Plaintiff,

13  v.

14 COUNTY OF KERN, et al.,

15    Defendants.

16

)
)
)
)
)
)
)
)
)
)
)

Case No.: 1:20-cv-0321 NONE JLT

FINDINGS AND RECOMMENDATIONS TO
GRANT DEFENDANT'S MOTION TO DISMISS

(Doc. 11)

17    Justin Fleeman is a former Chief Deputy with the Kern County Sheriff's Department and was a

18 candidate for sheriff in the 2018 election.  Following Plaintiff's defeat by the incumbent, Plaintiff was

19 the subject of an internal affairs investigation for disclosures made during his campaign, and his

20 employment was terminated.  Plaintiff seeks to hold the defendants liable for violation of his civil

21 rights under the First Amendment, retaliation for engaging in political activity, whistleblower

22 retaliation, wrongful discharge, and a violation of PAGA.  (*See generally* Doc. 1)

23    The County seeks dismissal of several causes of action pursuant to Rule 12(b)(6) of the Federal

24 Rules of Civil Procedure.  The County asserts Plaintiff is unable to state a claim under the Labor Code

25 and seeks dismissal of all claims arising under California law.  (Doc. 11)  Plaintiff opposes the motion,

26 asserting he complied with all pre-filing requirements and the facts alleged are sufficient to support his

27 state law claims.  (Doc. 15)  For the reasons set forth below, the Court recommends the County's

28 motion to dismiss be **GRANTED.**

## I.       Background and Plaintiff's Allegations[1]

Fleeman was an employee of the Kern County Sheriff's Department for over twenty years. (Doc. 1 at 2, ¶ 12)  In January 2018, "Fleeman notified Sheriff Donny Youngblood that he intended to run a campaign against Mr. Youngblood for Sheriff."  (*Id.* at 3, ¶ 13)  Fleeman asserts that Youngblood "expressed that he felt 'betrayed'" upon learning Fleeman's intent to run.  (*Id.*)

According to Fleeman, "Numerous Sheriff's Department employees were known to … engage in … inappropriate sexual conduct."  (Doc. 1 at 3, ¶ 14)  Fleeman asserts he "reasonably believed that amongst the biggest problems facing the Sheriff's Department was the seemingly rampant, unbecoming, and potentially illegal and inappropriate sexual conduct occurring within the Department." (*Id.*)  During the campaign, Fleeman asserted that if elected as sheriff, he "would put a stop to employees engaging in sexually inappropriate conduct - including extra-marital sexual relationships with other Deputies' spouses, sexual relations with subordinates, engaging in sexual relations while on duty, and engaging in inappropriate sexual relations with Sheriff's Activities League participants."  (*Id.*)

Fleeman criticized Youngblood during his campaign "for turning a blind eye to such conduct and failing to take adequate and appropriate action to deter such conduct."  (Doc. 1 at 3, ¶ 14) Fleeman alleges Youngblood "knew about, failed to curtail, and went so far as to ratify and/or approve such inappropriate conduct – as was evident from (among other sources) his numerous promotions of some of the main perpetrators and participants with respect to the conduct at issue."  (*Id.*, ¶ 15) Fleeman contends Youngblood "routinely reversed, eliminated, and/or diminished discipline imposed upon deputies who engaged in inappropriate sexual behavior."  (*Id.*)

At an unidentified time, "while off-duty at a campaign event," Fleeman spoke "in general about various unethical conduct within the Sheriff's Department and how, if elected Sheriff, he would not tolerate it."  (Doc. 1 at 6, ¶ 22)  Fleeman alleges that "[h]e provided a hypothetical in which a Sergeant slept with or tried to sleep with another Deputy's wife, was not disciplined, and was later promoted by the Sheriff to Lieutenant."  (*Id.*)  Fleeman "then questioned whether such conduct is ethical, and stated

---

[1] The parties' names are emphasized in capital letters throughout the complaint. In summarizing the allegations, the Court omits this emphasis.

that, if he were elected Sheriff, such conduct would not be tolerated." (*Id.*)  According to Fleeman, "[h]e did not mention any names, and was speaking in hypothetical terms." (*Id.*)  However, Fleeman reports Sheriff Youngblood "contended this speech constituted an unlawful disclosure of confidential personnel information and dishonesty because, according to [Youngblood], several people in attendance at the campaign event believed [Plaintiff] was referring to a specific incident involving Lieutenant Richard Garrett." (*Id.*)

Fleeman reports that in April 2018, Youngblood was interviewed by *The Bakersfield California*.  (Doc. 1 at 4, ¶ 18)  According to Fleeman, Youngblood indicated during the interview that Fleeman "'possibly committed a misdemeanor' by talking about rumors that were going through the Sheriff's Office." (*Id.*)  Fleeman asserts the newspaper article revealed that Youngblood questioned Fleeman's "fitness for leadership," and Fleeman's "aggressive approach… betrayed the trust he placed in him when he repeatedly promoted [Fleeman]." (*Id.* at 5, ¶ 19)  Fleeman reports Youngblood told *The Bakersfield Californian*, that Fleeman's "attacks sting," and stated: "I'm getting painted as a bad person by one of my own. That's painful… He's not just attacking me. He's attacking the whole organization." (*Id.*)

On June 5, 2018, Fleeman was defeated in the election by Youngblood.  (Doc. 1 at 5, ¶ 20) The following day, *The Bakersfield Californian* published an article with the headline: "Fleeman returning to Sheriff's Office after election defeat." (*Id.*)  Fleeman notes the newspaper stated, "Justin Fleeman is planning to return to work for an organization that may not welcome him back with open arms." (*Id.*) Further, the article stated: "Youngblood criticized Fleeman for running what he believed to be a dirty campaign aimed at ruining his reputation and that of the Sheriff's Office in order to win." (*Id.*)  Thus, Fleeman asserts Youngblood's "retaliatory animus was open, obvious, and repeatedly disclosed to the press (among others)." (*Id.*)

On June 29, 2018, Youngblood notified Fleeman "of a pending Internal Affairs investigation 'into allegations [he] disclosed confidential personnel information during [his] recent political campaign for Sheriff of Kern County'" and was "dishonest during the political campaign." (Doc. 1 at 5, ¶ 21)  Fleeman asserts the allegations related to his statements during the undated campaign event. (*Id.* at 6, ¶ 22)  The County "hired outside Counsel, Karen Kramer, to conduct the Internal Affairs

investigation." (*Id.* at 6, ¶ 23)

Fleeman reports he "was served with a Stay Away Order" regarding defendant Dustin Contreras on August 6, 2018. (Doc. 1 at 6, ¶ 25) Fleeman alleges Contreras was facing disciplinary action at the time, and was offered leniency by Chief Deputy Davis—acting at the direction of Youngblood—"in exchange for [Contreras] making a false complaint against Mr. Fleeman." (*Id.* at 7, ¶ 25)

"On September 18, 2018, Ms. Kramer issued a report regarding her investigation into the complaints" made by Garrett and Contreras against Fleeman. (Doc. 1 at 7, ¶ 26) According to Fleeman, Ms. Kramer concluded Fleeman "more likely than not disclosed confidential personnel information of Mr. Garrett during the course of his campaign for Sheriff." (*Id.*) Fleeman asserts the fact that he "undisputedly never referred to Mr. Garrett by name was also documented in Kramer's report." (*Id.*) Further, Ms. Kramer's report indicated the "accusations that Mr. Fleeman was dishonest and that he disclosed personnel information of Mr. Contreras… were not sustained." (*Id.*, ¶ 27) Thus, Plaintiff contends the report indicated it was "more likely than not that those incidents did not occur and the accusations were unfounded." (*Id.*)

Fleeman reports that on September 20, 2018, Youngblood issued "a 'Notice of Administrative Leave/Revocation of Peace Officer Powers' based upon an unspecified 'allegation and related [internal affairs] investigation.'" (Doc. 1 at 7, ¶ 28, alteration in original) Fleeman asserts the following week, he learned "his case had been leaked to the news media and that a story concerning [his] case had run on the five o'clock news." (*Id.*, ¶ 30) Fleeman alleges, "The news segment reported that, 'Fleeman reportedly is under investigation -- but the County isn't saying for what.'" (*Id.* at 7-8, ¶ 30) He contends the news story placed him "in false light" and "by failing to specify the investigation was an Administrative matter - as opposed to a criminal matter - the County unreasonably and falsely implied Mr. Fleeman had been accused of some sort of crime." (*Id.* at 8, ¶ 30) Fleeman asserts the disclosure to the media "violated Kern County's Sheriff's Policy l-100 regarding release of information to the media – the same policy [he was] later accused… of violating." (*Id.*, ¶ 31) He notes the policy provides, in relevant part "that names of Department employees subject to disciplinary action or investigation may not be released to the media." (*Id.*)

According to Fleeman, he learned on September 27 and October 4, 2018, that individuals were

discussing Fleeman's administrative leave.  (Doc. 1 at 8, ¶¶ 33-34)  He reports that "a Sergeant in the County's Search and Rescue division"—which "has no ties to Internal Affairs"— told people "specific details about why [Fleeman] was on Administrative Leave." (*Id.*, ¶ 34)  Fleeman reports that while others were told details, he "did not know the specifics as to why he was on Administrative Leave." (*Id.*) Further, he reports that a second individual stated he knew why Fleeman was on leave because "Youngblood mentioned the allegation during news interviews and… claimed that Mr. Fleeman committed a misdemeanor."  (*Id.* at 9, ¶ 35)

Fleeman reports that on October 8 and 9, 2018, "Mark Nations - who was the Department Head for Kern County's County Counsel - told two media outlets that Mr. Fleeman was on paid administrative leave based upon multiple complaints filed by Sheriff's Office employees."  (Doc. 1 at 9, ¶ 37)  Fleeman contends the statement from Nations "was misleading, as the letter placing Mr. Fleeman on administrative leave refers to only one 'allegation and related [IA] investigation,'" and "does not reference multiple allegations."  (*Id.*, alteration in original)

On March 5, 2019, Fleeman was served "with a Notice of Proposed Disciplinary Action – Termination."  (Doc. 1 at 9, ¶ 38)  Fleeman reports his case was reviewed by T.R. Merickel, Probation Chief, rather than "an unbiased hearing officer."  (*Id.*)  In the Notice, the County indicated Fleeman's termination was based upon: (1) "disclosure of confidential personnel information concerning Lieutenant Garrett, which The County of Kern contends violated its hostile work environment policy;" and (2) dishonesty, stemming from hypothetical statements made during the campaign event.  (*Id.*) Fleeman contends "none of the accusations have merit." (*Id.* at 10, ¶ 38)  On May 29, 2019, Fleeman received "a Notice of Disciplinary Action – Termination following a Skelly hearing, terminating his employment effective May 29, 2019."  (*Id.*)

Fleeman contends the County's "stated reasons for termination are pretext." (Doc. 1 at 10, ¶ 39) According to Fleeman, he "was, in fact, fired because he ran against Mr. Youngblood and spoke on matters of public concern, including sexual misconduct within the Sheriff's department and Mr. Youngblood's failure to adequately address such conduct."  (*Id.*)

Based upon the foregoing facts, Fleeman filed a Complaint in this Court on February 28, 2020. (Doc. 1) Fleeman seeks to hold the County, Youngblood, Garrett, Contreras, William Davis, David

Kessler, and T.R. Merickel liable for a violation of his civil rights under the First Amendment.  (Doc. 1 at 11-12, ¶¶ 51-61)  In addition, Fleeman seeks to hold the County liable for retaliation for engaging in political activity, whistleblower relation, wrongful discharge for lawful off-duty conduct, and a violation of PAGA.  (*See id.* at 13-15, ¶¶ 62-87)  The County now seeks dismissal of all claims against it arising under state law, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 11)

## II.      Allegations related to Exhaustion of Administrative Remedies

On August 28, 2019, Fleeman filed a "Claim against the County of Kern," which he attached to the Complaint as Exhibit A.  (Doc. 1 at 10, ¶¶ 41-42 ; *see also id.* at 19-30)  On September 25, 2019, the County issued a "Notice of Action Taken on Claim."  (*Id.*, ¶ 43; Doc. 1 at 32)  In the Notice, the County indicated the "Second Claim is deemed rejected on its merits." (*Id.*)  Fleeman was informed any court action must be filed "within 6 months of the denial." (*Id.* at 10, ¶ 43)

Fleeman reports he submitted an "EEO Complaint" to the Kern County Personnel Department on August 29, 2019.  (Doc. 1 at 11, ¶ 45) According to Fleeman, the County's Equal Employment Opportunity Officer failed to respond to the complaint, "initiate informal investigatory and conciliation efforts, []or initiate a formal investigation and issue appropriate findings of fact and recommendations within the deadlines provided by Kern County Civil Service Commission Rules 1820.01 and 1820.02." (*Id.* at 11, ¶ 47)  Fleeman asserts he filed a PAGA complaint with the California Labor and Workforce Development Agency on December 5, 2019.  (*Id.*, ¶ 48)

## III.     Request for Judicial Notice

The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.

The County requests the Court take judicial notice of Plaintiff's government claim dated February 28, 2019, and the denial notice dated March 6, 2019. (Doc. 11 at 14, n. 3) Fleeman argues that the "Motion to Dismiss is technically improper because it relies upon a February 2019 tort claim and rejection not alleged or referenced in the Complaint."  (Doc. 15 at 10)  Fleeman observes, "On a motion to dismiss under Rule 12(b)(6), courts generally cannot rely on any evidence outside the four corners of the complaint." (Doc. 15 at 10, citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).

However, the Ninth Circuit determined that "on a motion to dismiss a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment." *Mack v. South Bay Beer Distributors, Inc*., 798 F.2d 1279, 1282 (9th Cir. 1986). For example, it is proper for the Court to take judicial notice of a document and its contents to prevent a plaintiff from evading a Rule 12(b)(6) motion. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (court may consider document if authenticity not questioned in order to prevent plaintiff from prevailing on Rule 12(b)(6) motion by omitting documents underlying a claim). Thus, a court may take judicial notice of public records, including the filing date and contents government tort claims and the responses thereto, when relevant to the claims challenged. *See*, *e.g., D.K. v. Solano County Office of Educ.*, 667 F.Supp. 2d. 1184, 1189-90 (E.D. Cal. 2009) (taking judicial notice of the contents of the plaintiff's government tort claim and the rejection when evaluating a motion to dismiss under Rule 12(b)(6); *Clarke v. Upton*, 703 F.Supp.2d 1037, 1042 (E.D. Cal. 2010) (taking judicial notice of tort claims and the rejections as matters of public record where the defendant asserted the plaintiff failed timely comply with the California Tort Claims Act).

Fleeman does not question the authenticity of the documents and reports he "does not dispute he submitted the February 2019 tort claim, nor that it was rejected on March 5, 2019 as alleged by Defendants." (Doc. 15 at 10)  He also does not dispute that the government tort claim—and the related denial notice—address facts alleged in the complaint.  Through its motion to dismiss, the County challenges the timeliness of several claims, based upon the rejection notice dated March 6, 2019. (Doc. 11 at 12-14)  Thus, the documents are relevant to the claims challenged before the Court and judicial notice may be taken.  *See D.K.*, 667 F.Supp. 2d. at 1189-90; *Shaw v. City of Porterville*, 2015 WL 3795026, at *4 (E.D. Cal. June 17, 2015) (taking judicial notice of tort claim and notice of insufficiency of claim, where authenticity was undisputed and the tort claim was essential to the claims contested in a motion to dismiss). The County's request for judicial notice is **GRANTED**, and the Court takes judicial notice of the date and contents of the government tort claim dated February 28, 2019, and the denial notice dated March 6, 2019.[2]

---

[2] The court does not take judicial notice as to the veracity of the facts alleged in the government tort claim. *See Hunt v. Rodriguez*, 2009 WL 173070, at *3 (E.D. Cal. Jan. 23, 2009).

1    **IV.      Legal Standards for a Motion to Dismiss**

2           A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729,

3    732 (9th Cir. 2001). In ruling on a motion to dismiss filed pursuant to Rule 12(b), the Court "may

4    generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and

5    matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d

6    895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

7           Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable

8    legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp.*

9    *Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Thus, "[t]o survive a motion to dismiss, a complaint

10   must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

11   face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

12   570 (2007)). The Supreme Court explained,

13          A claim has facial plausibility when the plaintiff pleads factual content that allows the
             court to draw the reasonable inference that the defendant is liable for the misconduct
14          alleged. The plausibility standard is not akin to a "probability requirement," but it asks
             for more than a sheer possibility that a defendant has acted unlawfully. Where a
15          complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops
             short of the line between possibility and plausibility of 'entitlement to relief.'"

16

17   *Iqbal*, 556 U.S. at 678 (internal citations omitted).

18          Allegations of a complaint must be accepted as true when the Court considers a motion to

19   dismiss. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976). A court must construe

20   the pleading in the light most favorable to the plaintiff and resolve all doubts in favor of the plaintiff.

21   *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, legal conclusions need not be taken as true

22   when "cast in the form of factual allegations." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

23           "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled

24   to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a

25   recovery is very remote and unlikely but that is not the test."  *Scheuer v. Rhodes*, 416 U.S. 232, 236

26   (1974).  However, the Court "will dismiss any claim that, even when construed in the light most

27   favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student*

28   *Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  To the extent that the

1    pleadings can be cured by the plaintiff alleging additional facts, leave to amend should be granted.

2    *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)

3    (citations omitted).

4    **V.      Discussion and Analysis**

5         The County seeks dismissal of the causes of action in the complaint arising under state law.

6    (Doc. 11)  The County asserts: the claims arising under state law should be dismissed due to

7    Fleeman's "failure to file suit within six months of the denial of his government claim."  (*Id.* at 14)

8    The County contends the "Third Cause of Action for whistleblower retaliation should be dismissed"

9    for failure to state a claim.  (*Id.* at 2; *see also id.* at 9)  The County also asserts the "Fourth Cause of

10   Action should be dismissed with prejudice because there is no separate civil cause of action under

11   Labor Code 96(k)."  (*Id.*)  Finally, the County seeks dismissal of the PAGA claim, arguing Plaintiff

12   failed to exhaust his claim and does not make a representative claim.   (*Id.* at 14-20, emphasis omitted)

13        **A.      Exhaustion and Presentation of Government Tort Claims**

14        Under the California Tort Claims Act, no suit for "money or damages" may be brought against

15   a public entity until a written claim has been presented to the public entity and the claim either has been

16   acted upon or is deemed to have been rejected.  Cal. Gov't Code, §§ 905, 945.4; *see also Mangold v.*

17   *California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995).  A suit for "money or damages"

18   includes all actions where the plaintiff seeks monetary relief, regardless of whether the action is

19   founded in "tort, contract or some other theory." *Hart v. Alameda County*, 76 Cal. App. 4th 766, 778

20   (1999).  The purpose of this requirement is "to provide the public entity sufficient information to enable

21   it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation."

22   *City of San Jose v. Superior Court*, 12 Cal.3d 447, 455 (1974) (citations omitted).

23        Claims must be presented to the appropriate agency no later than six months after the accrual

24   of the cause of action.[3]  Cal. Gov't Code § 911.2(a). The details of the claim need only allege a general

25   complaint with sufficient detail to reasonably enable the public entity to make an adequate

26   investigation. *Blair v. Superior Court*, 218 Cal.App.3d 221, 225 (1990)  If a plaintiff seeks to recover

27

28        [3] Accrual of the cause of action for purposes of the Act is the date of accrual that would be applied under
     applicable statute of limitations. *Shirk v. Vista Unified School Dist.*, 42 Cal. 4th 201, 209 (2007).

1   on a cause of action based upon facts not set forth in the initial government claim, the plaintiff must

2   timely file a separate claim. *Fall River Joint Unified School Dist. v. Superior Court*, 206 Cal.App.3d

3   431, 436 (1988).  When "a plaintiff relies on more than one theory of recovery …, each cause of

4   action must have been reflected in a timely claim" and the factual basis for each claim must be "fairly

5   reflected in the written claim." *Nelson v State of California*, 139 Cal.App.3d 72, 79 (1982).  Once a

6   claim is submitted, the public entity has 45 days to grant or deny the claim.  *See* Cal. Gov't Code §

7   912.4.  When the entity sends written notice of the rejection, the lawsuit must be commenced no later

8   than six months after the notice is deposited in the mail. *See* Cal. Gov't Code § 945.6(a)(1); *Baines*

9   *Pickwick v. City of L.A.*, 72 Cal. App. 4th 298, 303 (1999).

10        The timely filing of claims in accordance with the provisions of the Government Claims Act

11   "are elements of the plaintiff's cause of action and conditions precedent to the maintenance of the

12   action." *Willis v. Reddin*, 418 F.2d 702, 704 (9th Cir. 1969); *see also DiCampli-Mintz v. County of*

13   *Santa Clara,* 55 Cal. 4th 983, 990 (2012) ("The filing of a claim is a condition precedent to the

14   maintenance of any cause of action against the public entity and is therefore an element that a plaintiff

15   is required to prove in order to prevail").  Consequently, compliance with the timeliness provisions

16   may be challenged with a motion to dismiss.  *See Clarke*, 703 F.Supp.2d at 1042; *Ovando v. City of*

17   *Los Angeles,* 92 F. Supp. 2d 1011, 1023 (C.D. Cal. 2000).

18                    1.        First Tort Claim

19        Fleeman submitted a "Claim Against the County of Kern" pursuant to Cal. Gov't Code §§ 910,

20   910.2, and 910.4 on February 28, 2019.  (Doc. 11-1 at 4)  In the claim, Fleeman indicated:

21           Chief Fleeman submits this Government Tort Claim against the County of Kern and the
             individuals specified herein for numerous counts of defamation, false light, invasion of
22           privacy, unauthorized use of Chief Fleeman's name and likeness, retaliation for
             engaging in political activity in violation of Labor Code sections 1101 and 1102,
23           whistleblower retaliation in violation of Labor Code section 1102.5, violations of Chief
             Fleeman's civil rights under Article 1 of the California Constitution, and violations of
24           the Peace Officer's Bill of Rights (POBRA).

25   (*Id.* at 6) Fleeman described the statements made by Youngblood during the campaign, including those

26   printed in *The Bakersfield Californian*, and asserted that "Youngblood repeatedly disclosed his

27   retaliatory animus to the press."  (*Id.* at 6-7)  Fleeman reported that he was notified of a pending

28   internal affairs investigation on June 29, 2019, shortly after he lost the election.  (*Id.* at 7)  In addition,

Fleeman noted in the claim that on September 20, 2018, Youngblood issued a "Notice of Administrative Leave/Revocation of Peace Officer Powers" to Fleeman.  (*Id.* at 8)  Fleeman stated the investigation and administrative leave "was leaked to the media," and asserted the County placed him in a false light by failing to specify the investigation being made "was an Administrative matter, as opposed to a criminal matter."  (*Id.* at 9)

On March 7, 2019, the County issued a "Notice of Action Taken on Claim." (Doc. 11-1 at 14) The County indicated the claim submitted "was not acted upon by the Board" and was "deemed rejected on its merits."  (*Id.*)  Further, the County indicated that it expressly reserved:

> 1) The right to challenge the timeliness of the claim (if discovery discloses that the claimant knew or should have known of the alleged occurrence prior to the date of occurrence noted in the claim); 2) the right to assert any statute of limitations defense and 3) the right to assert any prejudice to the County as a result of the failure to present the claim within the time specified in Government Code Section 911.2.

(*Id.*)  The rejection letter also informed Fleeman that, subject to certain exceptions, he had "only six (6) months from the date [the] notice was deposited in the mail to file a court action on this claim."  (*Id.*)

### 2.   Second Tort Claim

On August 28, 2019, Fleeman filed a second "Claim against the County of Kern," which he attached to the Complaint as Exhibit A.  (Doc. 1 at 10, ¶¶ 41-42 ; *see also id.* at 19-30)  The second claim stated, in part:

> Justin Fleeman intends to file suit for money damages and other relief against Kern County and the individuals named herein for injuries he sustained to his reputation (including numerous counts of defamation, false light, invasion of privacy, unauthorized use of Chief Fleeman's name and likeness), for violations of California's Government Code and Labor Code (including retaliation for engaging in political activity in violation of California Government Code sections 3201 et seq., Labor Code sections 1101 and 1102, whistleblower retaliation in violation of Labor Code section 1102.5, and retaliation for engaging in lawful, off-duty conduct in violation of Labor Code sections 96(k) and 98.6), violations of Justin Fleeman's civil rights under Article 1 of the California Constitution, and violations of the Peace Officers' Bill of Rights Act (POBRA), amongst other tort and contract claims.

(Doc. 1 at 21)  Fleeman asserted he was fired for "false and unsubstantiated reasons."  (*Id.* at 30) According to Fleeman, he "was terminated for his general reference and expressed desire to put an end to sexual impropriety and misconduct within the Department."  (*Id.* at 29)  In addition, Fleeman believed he was "fired because he ran against Sheriff Youngblood and lost."  (*Id.* at 30)

On September 25, 2019, the County issued a "Notice of Action Taken on Claim." (Doc. 1 at 10, ¶ 43; Doc. 1 at 32) The Notice informed Fleeman: "the Second Claim which you submitted to the Clerk of the Kern County Board of Supervisors on September 4, 2019 was not acted upon by the Board. Your Second Claim is deemed rejected on its merits." (Doc. 1 at 3) The Notice also stated:

> Please be advised that each claim set forth in your First Claim is applicable and related solely to your First Claim. All new issues/allegations/claims which are addressed in your Second Claim will be applicable and related to your Second Claim. If there are continuing issues/allegations/claims set forth in your Second Claim, only the portions of the issues/allegations/claims which occurred after the filing of the First Claim are related to the Second Claim, and are addressed by this Notice.

(*Id.*) Again, the County reserved the right to challenge the claim and to assert a statute of limitations defense. (*Id.*)

### 3. Discussion

The County asserts Fleeman "failed to properly comply with the government claim process." (Doc. 11 at 13) The County notes the First Claim "raised substantially the same facts, and many of the same legal issues as the subsequent claim, including retaliation for engaging in political activity and whistleblower retaliation." (*Id.* at 14) According to the County, "To preserve his claims under Labor Code sections 1101, 1102, and 1102.5, plaintiff should have filed suit… within 6 months of the County's denial of his government claim raising those issues." (*Id.*) Thus, the County asserts any suit addressing these causes of action should have been filed no later than September 6, 2019. The County contends Fleeman "is not entitled to exemption from the six-month filing requirement because there is no indication that he made reasonable efforts to initiate the lawsuit earlier." (*Id.*, citing Cal. Gov't Code § 945.6(b))

Fleeman asserts he "complied with the Tort Claims Act," because he filed a tort claim within six months of his termination date of May 29, 2019. (Doc. 15 at 10, emphasis omitted) He notes: "A claim relating to a personal injury cause of action must be presented within six months after accrual of the cause of action." (*Id.*, quoting *Connelly v. Cty. of Fresno*, 146 Cal. App. 4th 29, 37 (2006)). In addition, Fleeman observes:

> The Supreme Court of California holds that a cause of action for wrongful termination does not "accrue" until the official date of termination. *See, Romano v. Rockwell International*, 14 Cal.4th 479, 493 (1996) (rejecting argument that the statute of limitations begins to run upon the date of notification of the termination decision).

1

2

"[F]or purposes of filing a [government] tort claim for wrongful termination, the cause of action accrues when the employment is actually terminated, whether by the employer or the employee." *Colores v. Bd. of Trs.*, 105 Cal. App. 4th 1293, 1320 (2003).

3

(Doc. 15 at 10)  Because he filed a "tort claim less than three months" after his termination, and

4

initiated this civil suit "just over five months" after the County acted on his Second Claim, Fleeman

5

maintains "he fully complied with the Tort Claims Act and his claims are timely." (*Id.*) Fleeman

6

argues, "Defendants cite no legal authority holding that when a plaintiff submits multiple tort claims,

7

the plaintiff must sue within 6 months of rejection of the initial claim even though the lawsuit concerns

8

conduct that occurred after the initial claim." (*Id.* at 11)

9

      Fleeman observes, "when an initial tort claim fails to state a cause of action, and a subsequent

10

tort claim is submitted to correct the defect, the statute of limitations runs as of the date of rejection of

11

the second tort claim, not the first." (Doc. 15 at 11, citing *Norwood v. S. Cal. Rapid Transit Dist.*, 164

12

Cal.App.3d 741, 742-744 (1985))  He notes that in *Norwood,* the court held the "statute of limitations

13

on a wrongful death claim did not begin to run until a second tort claim submitted on behalf of all heirs

14

was rejected, and cautioning courts against 'placing form over substance' where initial claim was

15

submitted on behalf on only one of several heirs." (*Id.*)  Fleeman argues his First Claim "did not did

16

not and could not state a cause of action for wrongful termination in violation of Labor Code sections

17

1101, 1102, 1102.5, 96(k) and/or Government Code sections 3201 *et seq.* because a claim for wrongful

18

termination does not accrue until the actual date of termination – in this case, May 29, 2019." (*Id.* at

19

11)  Fleeman asserts that, as a result, his "claims are timely because he had not been discharged or lost

20

employment, nor had he even been notified of a proposed discharge or loss of employment, when he

21

filed his initial government tort claim." (*Id.* at 11-12)

22

      Significantly, the facts now before the Court are not similar to those before the court in

23

*Norwood.*  In *Norwood*, the plaintiff timely filed a claim of wrongful death with the public entity,

24

which responded by mailing notice of rejection of the claim.  *Id.*, 164 Cal.App.3d at 743.  However,

25

Linda Norwood was not the decedent's sole heir and, together with her siblings, she timely filed an

26

amended claim for damages on behalf of all decedent's heirs.  *Id.*  The amended claim was denied by

27

operation of law 45 days, after which Norwood and her siblings filed a civil suit for wrongful death. *Id.*

28

The trial court determined the six-month statute of limitations began to run when the first claim was

rejected, and the civil suit was untimely. *Id.*  On appeal, the court concluded the first claim was defective, because it did not include all heirs as required by state law, and the statute of limitations began to run with the second—and only proper—tort claim. *Id.* at 744.  Here, there was no similar legal defect in Fleeman's First Claim presented in February 2019.

In the First Claim, Fleeman indicated that he intended to file suit for several causes of action, including "retaliation for engaging in political activity in violation of California Government Code sections 3201 et seq., Labor Code sections 1101 and 1102 [and] whistleblower retaliation in violation of Labor Code section 1102.5. (Doc. 11-1 at 6)  Importantly, these claims are now included in the complaint, which includes the following causes of action under state law: (1) retaliation for engaging in political activity in violation of Cal. Lab. Code §§ 1101, 1102, 3201; whistleblower retaliation in violation of Cal. Lab. Code § 1102.5, and "wrongful discharge for lawful off-duty conduct" in violation of Cal. Lab. Code § 96(k). (*See* Doc. 1 at 1, 11-14, emphasis omitted) The only distinction is that in the First Claim, Fleeman did not identify a cause of action under Section 96(k).  (*Compare* Doc. 1 at 1 *with* Doc. 11-1 at 6)

As the County observes, claims under Cal. Lab. Code §§ 1101, 1102, and 1102.5 do not require *termination* as an element of the causes of action, which are each grounded in the theory that the plaintiff suffered retaliation for lawful conduct.  As a California court observed:

> Although the specific conduct protected by each of these statutes differs, the essential elements of a retaliation claim are well settled: To establish a prima facie case of retaliation, a plaintiff must show (1) he engaged in a protected activity, (2) the employer subjected him to an adverse employment action, and (3) there is a causal link between the two.

*Armendariz v. City of Burbank*, 2016 WL 6875918 (Cal. App. 2 Dist. Nov. 22, 2016); *see also Ali v. L.A. Focus Publication*, 112 Cal. App. 4th 1477, 1487-88 (2002) (addressing retaliation claims under Sections 1101 and 1102); *Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378, 1386 (2005) (addressing retaliation under Section 1102.5).  In support of his retaliation causes of action, Fleeman identified several acts in the First Claim that may constitute "adverse employment actions," such as the internal affairs investigation that began only weeks after he lost the election, administrative leave, and removal of peace officer powers.  *See, e.g., Lewis v. City of Fresno*, 2011 WL 2784808, at *4 (E.D. Cal. July 13, 2011) (rejecting the argument that an internal affairs investigation was not an

14

adverse action for a retaliation claim); *Arcure v. Cal. Dep't of Developmental Servs*., 2016 WL 3940345, at*14 (E.D. Cal. July 20, 2016) (subjecting an individual to an internal affairs investigation and placing him on administrative leave constituted adverse employment actions).  Fleeman is unable to argue that his retaliation claims had not accrued prior to the filing of the First Claim, and the facts alleged provided sufficient information to enable the County to adequately investigate his claims.

The filing of a new tort claim was not required prior to Fleeman filing suit against the County, because there was no legal defect.  *See Sofranek v. County of Merced*, 146 Cal.App.4th (2007) (finding the rationale of *Norwood* was inapplicable where "the first claim was proper and a new claim was not a necessary predicate to filing a lawsuit"), citing Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2006) ¶ 1:741, p. 1-159 [*Norwood* does not apply to extend the limitations period where the second claim was an "unnecessary amendment")].  Thus, the First Claim governed any civil suit addressing Fleeman's retaliation claims, and the civil action should have been filed within six months of the denial of the First Claim, or no later than September 6, 2019.  Because Fleeman did not initiate this action until February 28, 2020, the civil suit is untimely, and the Court recommends the retaliation claims arising under state law—both the Second and Third Cause of Action—be dismissed.

**B.     Third Cause Action: Whistleblower Retaliation**

Plaintiff seeks to hold the County liable for a violation of Cal. Lab. Code § 1102.5 (Doc. 1 at 13-14), which is a "whistleblower" statute.  *See Green v. Ralee Eng'g Co.,* 19 Cal. 4th 66, 76-77 (1998); *see also Garcia v. Rockwell Int'l Corp*., 187 Cal.App.3d 1556, 1561 (1986) (explaining "the Labor Code section merely enunciated already existing public policy," which "forbids retaliatory action taken by an employer against an employee who discloses information regarding an employer's violation of law to a government agency").  The purpose of Section 1102.5 is to "encourag[e] workplace 'whistleblowers,' who may without fear of retaliation report concerns regarding an employer's illegal conduct." *Collier v. Superior Court*, 228 Cal.App.3d 1117, 1123 (1991).  In relevant part, Section 1102.5 provides:

> An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another

employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

Cal. Lab. Code § 1102.5(b). To establish a prima facie case of retaliation under Section 1102.5, "a plaintiff must show that [he] engaged in protected activity, that [he] was thereafter subjected to adverse employment action by [his] ... employer, and there was a causal link between the two." *Robles v. Agreserves, Inc*., 158 F. Supp. 3d 952, 1008 (E.D. Cal. 2016) (quoting *Soukup v. Law Offices of Herbert Hafif*, 39 Cal.4th 260, 287-88 (2006)). The protection of Section 1102.5 "is not extended to general complaints made about the work environment." *Greer v. Lockheed Martin Corp*., 855 F. Supp. 2d 979, 989 (N.D. Cal. 2012).

### 1. Protected activity under Section 1102.5

A plaintiff engages in protected activity for a report under Section 1102.5 when the employee has reasonable cause to believe the disclosure includes "a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." Cal. Lab. Code § 1102.5(a), (b); *see also Patten v. Grant Joint Union High Sch. Dist*., 134 Cal. App. 4th 1378, 1386 (2005)) (the reporting employee must "reasonably believe []he was disclosing a violation of state or federal law"). In addition, the statute clarifies that "[a] report made by an employee of a government agency to their employer is a disclosure of information to a government or law enforcement agency." Cal. Lab. Code § 1102.5(e).

### 2. Plaintiff's statements

The County asserts Fleeman's claim for whistleblower retaliation fails because "he did not disclose activity that he reasonably believed was unlawful under federal or state law." (Doc. 11 at 9) The County argues Fleeman "does not provide specifics, instead requiring speculation about what statements he allegedly made referenced in the Complaint that would constitute protected disclosures." (*Id*. at 21) Further, the County contends that Fleeman "made no qualifying protected disclosures to government or law enforcement." (*Id*. at 23)

In response, Fleeman contends he "alleges protected activity under the Whistleblower

Protection Act." (Doc. 15 at 17, emphasis omitted)  Fleeman asserts he engaged in protected activity because he "disclosed to his fellow law enforcement officers during the course of his campaign for Sheriff that there was rampant, unbecoming, and potentially illegal and inappropriate sexual conduct occurring within the Department, including extra-marital sexual relationships with other Deputies' spouses, sexual relations with subordinates, engaging in sexual relations while on duty, and engaging in inappropriate sexual relations with Sheriff's Activities League participants."  (*Id.* at 18, citing Compl. ¶ 14 [Doc. 1 at 3, ¶14])  Fleeman asserts he "further disclosed that Sheriff Youngblood had been turning a blind eye to such conduct and failing to take adequate and appropriate action to deter such conduct."  (*Id,*, citing Doc. 1 at 3, ¶ 14)  Finally, Plaintiff asserts he "alleges he disclosed the misconduct to law enforcement agents."  (*Id.* at 2, citing Comp. ¶ 70)  He asserts, without citation to the complaint, "while it is true the disclosures were made in the course and scope of Plaintiff's campaign, the recipients of the statements were Sheriff's Department agents."  (*Id.*)

However, in the complaint, Plaintiff fails to provide sufficient information in his complaint to support a conclusion that he made disclosures related to activity he believed to be in violation of federal or state statute to law enforcement agents.  In the cited paragraph, Plaintiff alleged:

> One of Mr. Fleeman's campaign messages was to the effect that, if elected, Mr. Fleeman would put a stop to employees engaging in sexually inappropriate conduct - including extra-marital sexual relationships with other Deputies' spouses, sexual relations with subordinates, engaging in sexual relations while on duty, and engaging in inappropriate sexual relations with Sheriff's Activities League participants. Numerous Sheriff's Department employees were known to previously engage in such inappropriate sexual conduct on numerous occasions. Mr. Fleeman understood and reasonably believed that amongst the biggest problems facing the Sheriff's Department was the seemingly rampant, unbecoming, and potentially illegal and inappropriate sexual conduct occurring within the Department. During the campaign, Mr. Fleeman criticized Mr. Youngblood for turning a blind eye to such conduct and failing to take adequate and appropriate action to deter such conduct.

(Doc. 1 at 3, ¶ 14)  Significantly, there is no information in the complaint regarding what statements Fleeman made—or to whom—during the course of his campaign.[4]

---

[4] To the extent Plaintiff alleges he made statements about the "known" conduct of Sheriff Department employees engaging in "inappropriate sexual conduct," known conduct may not support his claim because California courts have indicated the word "disclosure" under Section 1102.5 "means to reveal something that was hidden and not known." *See Mize-Kurzman v. Marin Cmty. Coll. Dist.*, 202 Cal. App. 4th 832, 858 (2012); *see also McGill v. Comcast Cable*, 2017 WL 4877449 at*6 (N.D. Cal. Oct. 30, 2017) (finding the plaintiff failed to establish a claim under Section 1102.5 because he "did not blow a whistle by disclosing previously unknown information").

Fleeman also asserted that he made "hypothetical statements… during the campaign while off-duty at a campaign event." (Doc. 1 at 6, ¶ 22)  Fleeman alleged: "At this off-duty campaign event, [Mr. Fleeman] was speaking in general about various *unethical conduct* within the Sheriff's Department and how, if elected Sheriff, he would not tolerate it. He provided a hypothetical in which a Sergeant slept with or tried to sleep with another Deputy's wife, was not disciplined, and was later promoted by the Sheriff to Lieutenant. He then questioned whether such conduct is ethical…" (*Id., ¶* 22, emphasis added)  According to Fleeman, "[h]e did not mention any names, and was speaking in hypothetical terms." (*Id.*)  However, Fleeman has not identified any authority that stating hypothetical scenarios satisfy the disclosure requirement of Section 1102.5.  There is no indication that Fleeman made any statements at the campaign event regarding specific conduct that he believed was *illegal* or violated a "state or federal statute."  In addition, there are no facts alleged related to when the event occurred, or whether the statements were to individuals or the general public at the event.  Thus, the Court is also unable to conclude statements at the campaign event were disclosures made to law enforcement agents as required to state a claim under Section 1102.5(b).

Although Plaintiff also alleges that he "engaged in protected activity under California Labor Code section 1102.5 by disclosing information to law enforcement agents that he reasonably believed constituted a violation of law" (Doc. 1 at 14, ¶ 70), and cites this paragraph in support of his opposition to the motion, this allegation is nothing more than a legal conclusion cast as a factual allegation. He has not identified specific statements such that the Court may find a "protected activity," what specific information was disclosed, or to whom the statements were made, such that the Court may conclude the statements were made to "law enforcement agents." (*See id.*)  Thus, the facts alleged are insufficient to support a claim under Section 1102.5.

### 3.  Failure to identify violated statute, rule, or regulation

Fleeman asserts that under Section 1102.5, and "employee need not expressly identify the rule she believes the employer violated, so long as the information disclosed is enough to raise some concerns of a potential legal violation. (Doc. 15 at 17, citing *Ross v. County of Riverside*, 36 Cal. App. 5th 580, 592 (2019); *Miller v. Dep't of Corr.*, 36 Cal. 4th 446, 474 (2005) ("[T]he conduct plaintiffs complained of *may* constitute sexual harassment in violation of the FEHA. We do not believe

1  employees should be required to elaborate to their employer on the legal theory underlying the

2  complaints they are making, in order to be protected by the FEHA." [emphasis in original]]).

3       Fleeman observes: "In *Miller*, the plaintiffs alleged the warden at the prison where they worked

4  was showing unwarranted favoritism towards women with whom he was having affairs, and that they

5  were retaliated against for complaining about it."  (Doc. 15 at 17, citing *Miller*, 36 Cal. 4th at 450).  The

6  court found "opposition to the warden's conduct was protected activity for purposes of a retaliation

7  claim, because they had reasonable grounds to believe such favoritism was illegal, even if they were

8  mistaken as to either the facts or the law."  (*Id.*)  However, *Miller* was not addressing whistleblower

9  retaliation under Section 1102.5, and addressed only retaliation in violation of California's Fair

10  Employment and Housing Act.  *See Miller*, 26 Cal. 4th at 472-73.

11       Similarly, *Ross* may be distinguished from the matter now before the Court.  In *Ross*, a former

12  assistant district attorney brought a claim for violation of Labor Code section 1102.5 against the

13  county. During his employment, Ross disclosed to his superiors that the DA's office would not be able

14  to prove a particular case beyond a reasonable doubt, stating the DA lacked probable cause, a

15  confession was coerced, and DNA evidence exculpated the defendant.  *Ross*, 36 Cal.App.5th at 592.

16  Ross recommended dismissal of the case, based "at least in part, on his belief continued prosecution

17  would violate the defendant's due process rights as well as a prosecutor's ethical obligations under state

18  law."  *Id.* The court found "the evidence shows Ross engaged in protected activity because he disclosed

19  information to a governmental or law enforcement agency and to people with authority over him which

20  he reasonably believed disclosed a violation of or noncompliance with federal and state law applicable

21  to criminal prosecutions and prosecutors."  *Id.*  Thus, the court found summary judgment should not

22  have been entered, because Ross provided a legal foundation for his belief that the disclosed actions

23  violated several statutes and rules, including: Cal. Bus. & Prof. Code § 6068; Cal. Gov't Code § 26504;

24  and Rules Prof. Conduct, rule 3.8(a).  *Id.* Here, the complaint does not include any information

25  regarding the specific disclosures made by Fleeman, or facts sufficient to support a conclusion that he

26  had a reasonable belief that any disclosed action was illegal.

27       Courts reviewing *Ross* have concluded "*Ross* does not suggest that a plaintiff asserting a claim

28  under Labor Code section 1102.5 need not assert the reasonable belief of *a specific violation* at some

1   point during the trial court proceedings." *Behazin v. Dignity Health, Inc.*, 2020 WL 5228426 at* 7

2   (Cal. App. 2 Dist. Sept. 2, 2020) (emphasis added); *Markosyan v. Superior Court of L.A. County*, 2020

3   WL 7654237 at*5 (Cal. App. 2 Dist. Dec. 24, 2020) (observing that *Ross* required proof of reasonable

4   belief, and the plaintiff had a legal foundation for believing prosecuting individuals exonerated by

5   DNA testing violated the law). Moreover, California courts indicated that under Section 1102.5,

6   plaintiff should be able to identify a specific state or federal statute, rule, or regulation he believed the

7   defendants were violating. *Carter v. Escondido Union High Sch. Dist*., 148 Cal. App. 4th 922, 933

8   (2007); *Khdrlaryan v. Olympia Med. Ctr.*, 2013 WL 4814990, at *4 (Cal. App. Sept. 9, 2013) (finding

9   the facts alleged were not sufficient to state a claim under Section 1102.5(b) where "the complaint did

10  not allege any specific federal or state code violation" and the plaintiff ailed to identify any legal

11  foundation for her complaint that defendants engaged in illegal practices"); *see also Nolasco v.*

12  *Scantibodies Lab*, 2019 WL 926968, at *15 (Cal. App. 4 Dist. Feb. 26, 2019) ("failure to identify a

13  statute or regulation may be evidence that the employee's belief is unreasonable").

14          This Court and other district courts have also determined that under Section 1102.5,"[t]o have a

15  reasonably based suspicion of illegal activity, the employee must be able to point to some legal

16  foundation for his suspicion—some statute, rule or regulation which may have been violated by the

17  conduct he disclosed." *Fitzgerald v. El Dorado County*, 94 F.Supp. 3d 1155, 1172 (E.D. Cal. 2015); *see*

18  *also Love v. Motion Indus., Inc*., 309 F. Supp. 2d 1128, 1135 (N.D. Cal. 2004) (without citing to "any

19  statute, rule or regulation that may have been violated by the disclosed conduct," the plaintiff lacked

20  "any foundation for the reasonableness of his belief"); *Roadrunner Intermodal Services, LLC v. T.G.S.*

21  *Transportation, Inc*, 2019 WL 3946895, at *7 (E.D. Cal. Aug. 21, 2019) ("a plaintiff fails to show

22  reasonable cause for his suspicion of a violation of law when he … argues simply that he reasonably

23  believed that the activity violated some unnamed statute, rule, or regulation"). As the Central District

24  observed, "a rule requiring a plaintiff to allege in his complaint the statutes underlying his section

25  1102.5 claim is consistent with well-established Ninth Circuit authority holding that the basis of a

26  plaintiff's claim must be set forth *in the complaint*." *Thomas v. Starz Entertainment LLC*, 2016 WL

27  844799, at *5 (C.D. Cal. Feb. 29, 2018) (emphasis in original).

28          Because Fleeman fails to identify a specific statute, rule, or regulation that he believed the

1  County violated—or provide a legal foundation for this belief in the complaint— he fails to state a

2  claim under Section 1102.5(b).  *See Fitzgerald*, 94 F.Supp. 3d at 1172; *Love*, 309 F. Supp. 2d at 1135.

3  **C.    Fourth Cause of Action: Violation of Cal. Labor Code § 96(k)**

4      Fleeman seeks to hold the County liable for "termination for lawful, off-duty conduct" in

5  violation of Cal. Lab. Code § 96(k) as his fourth cause of action.  (Doc. 1 at 14, emphasis omitted)

6  In relevant part, Section 96(k) indicates:

> The Labor Commissioner and his or her deputies and representatives authorized by
> him or her in writing shall, upon the filing of a claim therefor by an employee, or an
> employee representative authorized in writing by an employee, with the Labor
> Commissioner, take assignments of:
> …
> (k) Claims for loss of wages as the result of demotion, suspension, or discharge from
> employment for lawful conduct occurring during nonworking hours away from the
> employer's premises.

12  Cal. Lab. Code § 96(k).

13      The County seeks dismissal of the claim under Section 96(k), asserting "this statute does not

14  give rise to an independent cause of action."  (Doc. 11 at 23, citing *Barbee v. Household Automotive*

15  *Finance Corp.*, 113 Cal.App.4th 525 (2013)).  The County observes that in *Barbee*, "the appellate court

16  held that Labor Code section 96(k) does not, on its face, preclude an employer from taking any

17  adverse employment action against an employee, but simply provides the Labor Commissioner with

18  the authority to take assignment of preexisting claims from the employee."  (*Id.*)  Thus, the County

19  contends the fourth cause of action should be dismissed with prejudice.  (*Id.* at 23-24)

20      In response, Fleeman asserts that "Labor Code Sections 244 and 98.7(g) permit employees to

21  sue in court for violations of Labor Code Section 96(k)."  (Doc. 15 at 20, emphasis omitted)  Fleeman

22  asserts that *Barbee* was superseded by statute, based upon the enactment of Labor Code Sections 244

23  and 98.7(g).  (*See id.* at 20-21)  In support of this assertion, Fleeman quotes this Court's prior

24  explanation of the legislative changes:

> In 2014, however, the legislative backdrop changed. The California state
> legislature adopted California Labor Code section 244, which became effective January
> 1, 2014. Section 244(a) makes it clear that a plaintiff seeking to enforce his rights under
> any section of the Labor Code need not exhaust administrative remedies prior to
> bringing suit if that section does not expressly require it. Cal. Labor Code § 244(a). In
> addition, the legislature adopted California Labor Code section 98.7(g), which also
> became effective as of January 1, 2014. Section 98.7(g) provides: 'In the enforcement of
> this section, there is no requirement that an individual exhaust administrative remedies

1    or procedures.' Cal. Labor Code § 98.7(g).

2           In light of these legislative changes, district courts that have since revisited this
3    issue have held that a plaintiff filing suit for violations of the Labor Code need not
    exhaust administrative remedies by filing a complaint with the California Labor
    Commissioner.

4

5    (Doc. 15 at 20, quoting *Couch v. Morgan Stanley & Co*., 2014 U.S. Dist. LEXIS 54428 at \*16, 2014

6    WL 1577463 (E.D. Cal. Apr. 18, 2014) (emphasis omitted)). According to Fleeman, this indicates

7    "*Barbee's* analysis and reasoning are no longer applicable in light of the 2014 enactments of Labor

8    Code sections 244 and 98.7(g)." (*Id.* at 21)  Further, Fleeman asserts: "Even to the extent Labor Code

9    sections 244 and 983.7(g) [sic] do not supersede *Barbee*, Plaintiff still states a claim under Labor Code

10    section 96(k)" because it "provides a remedy for violation of established constitutional rights" and

11    "Fleeman alleges termination in violation of his right to free speech under the Constitution." (*Id.*)

12           Notably, however, this Court did not address whether there was a private right of action under

13    Section 96(k) in *Couch*.  Instead, the issue before the Court was whether the plaintiff failed to exhaust

14    administrative remedies before filing suit. *See Couch*, 2014 WL 1577463, at \*5-6.  Couch did not

15    attempt to bring a cause of action for a violation of Section 96(k), and the Court's comments were

16    limited to only the exhaustion of administrative remedies for violations of Cal. Lab. Code §§ 1101(a),

17    1102, and 98.6.  *See id.*  Thus, the Court's recitation of the legislative background in *Couch* does not

18    assist Fleeman in this action.

19           Courts have established that Section 96(k) did not create a private right of action.  *See Barbee*,

20    113 Cal.App.4th 525 (Section 96 "simply outlines the types of claims over which the Labor

21    Commissioner shall exercise jurisdiction"); *Grinzi v. San Diego Hospice Corp*., 120 Cal.App.4th 72

22    (2004) (Section 96(k) "does not set forth an independent public policy that provides employees with

23    any substantive rights, but rather, merely establishes a procedure by which the Labor Commissioner

24    may assert, on behalf of employees, recognized constitutional rights"); *see also Newson v. Walmart,*

25    *Inc.*, 2009 WL 1844351, at \*7-8 (E.D. Cal June 23, 2009) (finding no private cause of action under

26    Cal. Lab. Code § 96(k), and dismissing the plaintiff's causes of action for violations of Section 96(k)).

27    The fact Fleeman "alleges termination in violation of his right to free speech under the Constitution"

28    (Doc. 15 at 20) does not cure this defect.  *See Howe v. Target Corp.*, 2020 WL 5630273 (S.D. Cal.

Sept. 19, 2020) (rejecting the plaintiff's argument that her claim under Section 96(k) should not be dismissed because her she also alleged a violation of her right to privacy under the state constitution, and dismissing the plaintiff's claim for wrongful termination premised on Section 96(k) because only established a procedure for the Labor Commissioner and no substantive rights).  Because there is no cause of action under Cal. Lab. Code § 96(k), standing alone as Fleeman alleged in his complaint, the Court recommends the Fourth Cause of Action be dismissed.

### D.    Fifth Cause Action: PAGA

Fleeman asserts he "is an aggrieved employee as defined in Labor Code Section 2699(a)," and indicates that he seeks PAGA penalties "behalf of himself and other current and former employees, who are also aggrieved as a result of the labor law violations alleged in this Complaint."  (Doc. 1 at 15, ¶ 84)  The County seeks dismissal of the fifth cause of action, arguing Fleeman did not meet the administrative exhaustion requirements for any representative claim, and he is unable to bring an individual claim under PAGA.  (Doc. 11 at 14-20)

#### 1.    Exhaustion requirement

California adopted PAGA to allow individual plaintiffs "to bring a civil action to collect civil penalties for Labor Code violations previously only available in enforcement actions initiated by the State's labor law enforcement agencies." *Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365, 374 (2005); *see also* Cal. Lab. Code § 2699(a); *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121 (9th Cir. 2013).  To claim PAGA penalties, a plaintiff must exhaust the administrative procedures set out in Labor Code § 2699.3, which includes giving written notice to the California Labor and Workforce Development Agency and the defendants. *Caliber*, 134 Cal. App. 4th at 375-76; Cal. Lab. Code § 2699.3(a)(1).  After the LWDA responds that it will not prosecute the action or fails to respond to the notice with sixty days, a plaintiff may file suit. *Id*. § 2699.3(a)(2)(A).

Courts may dismiss PAGA causes of action for failure to exhaust the required administrative remedies. *See, e.g., Varsam v. Laboratory Corp. of Am*., 120 F. Supp. 3d 1173, 1183 (S.D. Cal. 2015) (dismissing PAGA claims for failure to exhaust administrative remedies); *see also Thomas v. Home Depot USA Inc*., 527 F. Supp. 2d 1003, 1007 (N.D. Cal. 2007) ("Individuals who bring claims under PAGA must comply with the administrative procedures set forth in Labor Code § 2699.3.").

2.      Plaintiff's LWDA Letter

On December 5, 2019, Fleeman "filed a PAGA Complaint with the California Labor and Workforce Development Agency, Complaint No. LWDA-CM-760468-19," which he attached to the Complaint as "Exhibit D."  (Doc. 1 at 11, ¶¶ 48-49)  In the LWDA Notice, Fleeman indicated he was "mak[ing] this complaint on behalf of himself for violations of the California Labor Code."  (*Id.* at 49)  The factual allegations of the LWDA Notice are similar to those in the tort claims, concluding:

> Former Chief Fleeman was, in fact, fired because he ran against Sheriff Youngblood. The stated reasons for termination are false and unsubstantiated.  But even if true, the stated reasons are illegal on their face as the County admits that it fired Former Chief Fleeman for engaging in speech during the course of a political campaign. Furthermore, all of the allegations against Former Chief Fleeman occurred while he was off duty and not in County owned building.

(Doc. 1 at 59)  Thus, Fleeman indicated the County engaged in unlawful discrimination and retaliation in violation of California Labor Code §§ 1101, 1102, 96(k), and 1102.5.  (*Id.*)

The County observes that the allegations in the LWDA Notice relate only to Fleeman as an individual and asserts Fleeman fails to "describe any Labor Code violations actionable as representative PAGA actions."  (Doc. 11 at 18)  The County argues Fleeman is unable to "proceed with an individual PAGA claim, as no such action exists."  (*Id.* at 20)  Further, the County asserts Fleeman is unable to bring a representative action, because in the LWDA Notice "there are no allegations that other 'aggrieved employees' experienced similar violations."  (*Id.*)

Fleeman acknowledges his LWDA Notice includes only claims to him as an individual but maintains "PAGA authorizes suits in cases where there is only one aggrieved employee."  (Doc. 15 at 12, emphasis omitted)  He asserts that wrongful termination claims "are inherently individual in nature," and "PAGA expressly provides penalties for violations of Labor Code sections 96(k), 1101, 1102, and 1102.5."  (*Id.* at 14) Furthermore, Fleeman argues that "to interpret PAGA as requiring there to be more than one aggrieved employee would conflict with the statute insofar as it expressly authorizes claims against employers with only one employee."  (*Id.* at 14-15)  Fleeman maintains, "Under Defendant's interpretation of PAGA, had the LWDA sought to investigate and intervene in this case, it would not be able to pursue penalties for violations of Labor Code sections 96(k), 1101, 1102, and 1102.5 – even though Labor Code section 2699.5 expressly identifies those provisions as

24

1   statutory violations subject to civil penalties – merely because a second employee was not also fired

2   for running a political campaign against Sheriff Youngblood." (*Id.* at 15)  According to Fleeman, the

3   requirement that claims not be on an individual basis yields "an absurd result." (*Id.*)

4          Significantly, despite Fleeman's contention to the contrary, courts have observed that "[t]he

5   plain language of the statute permitting PAGA actions states that a plaintiff must bring such an action

6   "on behalf of himself or herself *and* other current or former employees." *Ortiz v. Hobby Lobby Stores,*

7   *Inc.*, 52 F.Supp.3d 1070, 1088 (E.D. Cal. 2014), quoting Cal. Labor Code § 2699(a) (emphasis added in

8   original); *see also Reyes v. Macy's, Inc*., 202 Cal.App.4th 1119, 1123 (2011) ("[a] plaintiff asserting a

9   PAGA claim may not bring the claim simply on his or her own behalf but must bring it as a

10  representative action and include 'other current or former employees'"). Considering the language of

11  the statute, this Court and others have concluded a plaintiff cannot bring a PAGA claim only on his

12  own behalf.  *Ortiz*, 52 F.Supp.3d at 1089 (PAGA actions cannot exist on an individual basis");

13  *Machado v. M.A.T. & Sons Landscape, Inc.,* 2009 WL 2230788, at *2 (E.D. Cal. July 23, 2009)

14  ("Defendants are correct in asserting that a PAGA claim must be brought as a representative action.

15  *Flaishans v. Coram Specialty Infusion Servs.,* 2014 U.S. Dist. LEXIS 134765, at *4 n.4 (N.D. Cal.

16  Sept. 23, 2014) ("plaintiff may not bring claim for PAGA penalties solely on an individual basis");

17  *Mutchler v. Circle K Stores, Inc.*, 2020 WL 5511985 at *4 (S.D. Cal. Sept. 14, 2020) ("A single plaintiff

18  cannot state an individual claim for PAGA penalties").  Because LWDA Notice clearly indicated

19  Fleeman was "mak[ing] this complaint *on behalf of himself* for violations of the California Labor

20  Code" (Doc. 1 at 49) — and Fleeman acknowledges he intended to bring the claim on his own behalf—

21  his individual claim under PAGA fails.  Therefore, the Court recommends the County's motion as to

22  dismissal of the Fifth Cause of Action be granted.

23  **VI.    Leave to Amend**

24          Federal Rules of Civil Procedure Rule 15(a) provides that leave to amend "shall be freely given

25  when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on

26  the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.

27  2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for

28  failure to state a claim, "'a district court should grant leave to amend even if no request to amend the

pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

The second and third causes of action were filed beyond the six-month period provided by California Government Code section 945.6 and this defect cannot be cured. The fourth cause of action for violation of Labor Code section 96(k) also cannot be cured because there is no private right of action under this section. However, the Court is not convinced that the plaintiff cannot state a cause of action for wrongful termination under a different state statute, and, therefore, recommends that the plaintiff be granted leave to amend. Finally, though it is appears unlikely that the plaintiff can state a PAGA claim on behalf of other similarly situated, the Court has insufficient information to conclude that amendment is futile. Thus, the Court recommends that leave to amend be granted as to the Fifth Cause of Action.

## VII.    Findings and Recommendations

Based upon the foregoing, the Court **RECOMMENDS** that the County's motion to dismiss (Doc. 11) be **GRANTED** as follows:

1.    The Second Cause of Action for retaliation in violation of Cal. Lab.  §§ 1101, 1102 and Cal. Gov't Code § 3201 be **DISMISSED** without leave to amend;

2.    The Third Cause of action for whistleblower retaliation in violation of Cal. Lab. Code § 1102.5 be **DISMISSED** without leave to amend;

3.    The Fourth Cause of Action for a violation of Cal. Lab. Code § 96(k) be **DISMISSED** without leave to amend but that he be granted leave to amend to state a wrongful termination claim, if he can state a claim under a different state statute;

4.    The Fifth Cause of Action for a violation of PAGA be **DISMISSED** with leave to amend provided the plaintiff can state a PAGA cause of action within the confines of Rule 11.

These Findings and Recommendations are submitted to the United States District Judge

26

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days after being served with these Findings and Recommendations, any party may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **February 18, 2021**              **/s/ Jennifer L. Thurston**
                                           UNITED STATES MAGISTRATE JUDGE

27