1
2
3
4
5
6
7

8                      UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  JUSTIN FLEEMAN,                          No.  1:20-cv-00321-NONE-JLT

12              Plaintiff,                    ORDER ADOPTING IN PART AND
                                             DECLINING TO ADOPT IN PART THE
13       v.                                  FINDINGS AND RECOMMENDATIONS
                                             REGARDING DEFENDANTS' MOTION
14  COUNTY OF KERN, et al.,                   TO DISMISS

15              Defendants.                   (Doc. Nos. 36, 41)

16

17

18       Plaintiff Justin Fleeman is a former employee of the Kern County Sheriff's Department

19  and was a candidate for Sheriff in 2018.  Following plaintiff's election defeat, he was investigated

20  for disclosures he allegedly made during the campaign, placed on administrative leave, and

21  eventually terminated.  In his operative first amended complaint ("FAC"), plaintiff seeks to hold

22  defendants liable under 42 U.S.C. § 1983 for violating his First Amendment rights and for

23  wrongful termination under state law.  In addition, plaintiff asserts that defendant County of Kern

24  ("County") is estopped from claiming that plaintiff's wrongful termination claims are untimely.

25  (Doc. No. 35.)

26       Defendants moved to dismiss certain claims pursuant to Federal Rule of Civil Procedure

27  12(b)(6).  Defendants also argue that plaintiff's claim alleging a violation of California Labor

28  Code § 232.5 ("§ 232.5") is pre-empted by the National Labor Relations Act ("NLRA").  (Doc.

1

No. 36.)  Plaintiff opposed the pending motion to dismiss, asserting that his claims are cognizable and not pre-empted by the NLRA.  (Doc. No. 41.)

On May 26, 2021, the undersigned referred the pending motion to the assigned magistrate judge for purposes of issuing findings and recommendations.  (Doc. No. 37.)  On June 25, 2021, the magistrate judge issued findings and recommendations recommending that defendants' motion to dismiss be granted and that this case proceed only upon the first cause of action for alleged violation of plaintiff's First Amendment rights.  (Doc. No. 41.)  On July 9, 2021, plaintiff filed objections to the findings and recommendations.  (Doc. No. 43.)  Defendant did not respond to those objections.  In accordance with the provisions of 28 U.S.C. § 636 (b)(1)(C), this court has conducted a *de novo* review of the case.  Having carefully reviewed the entire file, and in light of the authorities presented in the objections, to which no response was filed, the court adopts the findings in recommendations in part and declines to adopt them in part.

### A.   Wrongful Termination Claim

Plaintiff's second cause of action for "wrongful termination" is based upon both California Civil Code §§ 52.1 ("Bane Act") and 232.5.  (Doc. No. 35 at 14–15.)  Defendant has moved to dismiss both aspects of this claim.  (Doc. No. 36.)

### 1.   Bane Act Claim

The magistrate judge recommended that plaintiff's Bane Act claim be dismissed because, among other things, plaintiff did not allege that "he was intimidated by any of the defendants or felt coerced to engage in, or not engage in, any actions related to his employment."  (Doc. No. 41 at 17.)  Plaintiff does not object to this conclusion.  (Doc. No. 43 at 15 n.1.)  The undersigned agrees that the facts alleged in the FAC are insufficient to support a wrongful termination claim under the Bane Act.  Accordingly, defendants' motion to dismiss that claim will be granted.

### 2.   California Labor Code § 232.5 Claim.

Plaintiff's second cause of action alleges wrongful termination under California Labor Code § 232.5.  Under § 232.5(c), an employer may not "[d]ischarge, formally discipline, or otherwise discriminate against an employee who discloses information about the employer's *working conditions*."  (Emphasis added.)  California's Labor Code does not define the term

2

"working conditions," but they generally include "[w]orking conditions determined by the employer as a condition of employment."  *United States ex rel. Lupo v. Quality Assurance Servs., Inc.,* 242 F. Supp. 3d 1020, 1030–31 (S.D. Cal. 2017).  As the magistrate judge observed (Doc. No. 41 at 11–12), courts have identified the following examples of working conditions: "attire, proper behavior, break room condition, elevator maintenance, seat comfort, temperature, lighting, uniforms, hair requirements, breaks, restroom facilities, and 'even one's required attitude.'" *Lupo*, 242 F. Supp. 3d at 1031 (quoting *Massey v. Thrifty Payless, Inc*., 2014 WL 2901377 at \*5 (Cal. Ct. App. June 27, 2014) (unpublished decision)).

### a.     Compliance with the Tort Claims Act

#### 1.     Sufficiency of Notice in the Tort Claim

Defendants move to dismiss plaintiff's § 232.5 wrongful termination claim on the grounds that the two government tort claims plaintiff presented to the County related to this claim failed to provide adequate notice of a claim under § 232.5.  (Doc. No. 36 at 21.)

California Government Code § 910 ("§ 910") sets forth general requirements for a tort claim, which must include, among other things:

> (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.
>
> (d) A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.
>
> (e) The name or names of the public employee or employees causing the injury, damage, or loss, if known.

As the magistrate judge observed, in both tort claims presented to the County, plaintiff Fleeman specifically indicated that he intended to file suit under various "provisions of state law— including specific Government and Labor Code provisions," but § 232.5 was <u>not</u> specifically mentioned, nor did either tort claim mention "working conditions" or any other language contained within § 252.3.  (Doc. No. 36 at 21.)  This is not necessarily fatal to plaintiff's § 232.5 claim because a tort claim "need not conform to pleading standards."  *Shoemaker v. Myers*,  2 Cal. App. 4th 1407, 1426 (1992) (citations omitted).  Rather, "[a tort] claim served on a governmental entity must fairly describe what that entity is alleged to have done."  *Id*.  The facts

contained within the tort claims must "provide the public entity sufficient information to enable it to adequately investigate" a claim brought under § 232.5.  *See City of San Jose v. Superior Court*, 12 Cal. 3d 447, 455 (1974).  "[A]s the purpose of the claim is to give the government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate meritorious actions, the claims statute should not be applied to snare the unwary where its purpose has been satisfied." *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth*., 34 Cal. 4th 441, 446 (2004)).  Although a complaint may not later advance a factual basis for recovery which is not fairly reflected in the written tort claim, *Fall River Joint Unified Sch. Dist. v. Superior Ct*., 206 Cal. App. 3d 431, 434 (1988), "[t]he claim . . . need not specify each particular act or omission later proven to have caused the injury."  *Stockett*, 34 Cal. 4th at 447.

In *Stockett* the California Supreme Court provided some general guidance on this point. There, the court held that a government claim was sufficient to preserve several theories underpinning plaintiff's claim of wrongful termination in violation of public policy even though not all of those theories were expressly set forth in the written claim.  The court in *Stockett* found that the plaintiff had complied with the tort claim presentation requirements:

> By notifying [his employer] JPIA of its act (wrongful termination) that caused his injury (loss of earnings, mental and physical pain and suffering) and naming those JPIA agents he believed responsible, Stockett's claim provided sufficient information for JPIA to investigate and evaluate its merits.  Contrary to JPIA's suggestion, a reasonable investigation of a wrongful termination claim would not be limited to the motives for termination hypothesized in the fired employee's claim form; certainly it would not be so limited where, as here, the employee at the time of termination asked for the reasons and was refused them.  A reasonable investigation by JPIA would have included questioning members of the committee to discover their reasons for terminating Stockett and an evaluation of whether any of the reasons proffered by the committee, including but not limited to the theories in Stockett's claim, constituted wrongful termination.

*Id*. at 449.  The court distinguished *Stockett's* case from that presented in *Fall River*:

> Unlike *Fall River* . . . , which JPIA cites as illustrating a fatal variance between a plaintiff's claim and complaint, the additional theories pled in Stockett's amended complaint did not shift liability to other parties or premise liability on acts committed at different times or places.  In *Fall River*, the plaintiff was injured at school when a steel door struck his head.  His notice of claim stated the injury was caused by the school's negligent maintenance of the door, but his complaint

4

additionally alleged the school had negligently failed to supervise students engaged in horseplay. [*Fall River*, 206 Cal. App. 3d at 433–434.]   The court held the factual divergence between claim and complaint was too great; the complaint alleged liability "on an entirely different factual basis than what was set forth in the tort claim." [*Id.* at 435.]   Stockett's complaint, in contrast, alleged liability on the same wrongful act, his termination, as was stated in his notice of claim.

*Id.* at 448.

Also instructive here is the decision in *Shoemaker*, 2 Cal. App. 4th 1407, which was cited by the California Supreme Court in *Stockett*. *See Stockett*, 34 Cal. 4th at 446, 448 n.5.  In *Shoemaker*, the plaintiff had submitted a tort claim alleging, among other things, that his dismissal "was an interference with [plaintiff's] responsibility and duty to carry out the law." 2 Cal. App. 4th at 1426.  Despite not using the term "whistleblower" or directly referencing the whistleblower protection statute, these allegations were found to have "alerted defendants of allegations in the second and third counts of retaliation for plaintiff's whistle-blowing activities." *Id.*  This was so because

[p]laintiff's job as an investigator for the [California] Department [of Health Services] was to investigate and report on compliance with the law as it related to the Department's functions.  When this investigation led to suspicion of wrongdoing by plaintiff's superiors at the Department, or other government employees, any interference with plaintiff's reporting duties implicated the whistle-blower statute.

*Id.*  "Although lacking in detail, the claim submitted by plaintiff was found to be adequate to enable defendants to investigate whether there had been a violation of the whistle-blower statute. It was therefore also complied with [applicable tort claim presentation requirements]."  *Id.* at 1426–27.

Here, defendants contend that plaintiff's § 232.5 cause of action was not fairly reflected in his tort claim. (Doc. No. 36 at 21.)  Specifically, defendants argue that plaintiff's tort claims did not put them on notice that plaintiff was complaining that he had been terminated for disclosing information about "workplace conditions."  (*Id.*)  Neither party suggests that § 910 requires plaintiff to use the phrase "workplace conditions" in his tort claim.  The key question here then is whether the tort claim contains "sufficient information for the public entity to conduct an

5

1    investigation into the merits" of the § 232.5 claim he now advances.

2            In his second tort claim, plaintiff asserted as follows:

3                    In or around January 2018, Chief Fleeman notified Sheriff Donny
                     Youngblood that he intended to run a campaign against Youngblood
4                    for Sheriff. . . .

5                    One of Chief Fleeman's campaign messages was to the effect that, if
                     elected, Chief Fleeman [would] put a stop to employees engaging in
6                    sexually inappropriate conduct - including extramarital sexual
                     relationships with other Deputies' spouses, sexual relations with
7                    subordinates, engaging in sexual relations while on duty, and
                     engaging in inappropriate sexual relations with Sheriff's Activities
8                    League participants.  Numerous Sheriff's Department employees,
                     including Undersheriff Brian Wheeler, were known to previously
9                    engage in such inappropriate sexual conduct on numerous occasions.
                     Chief Fleeman understood and reasonably believed that amongst the
10                   biggest problems facing the Sheriff's Department was the seemingly
                     rampant, unbecoming, and potentially illegal and inappropriate
11                   sexual conduct occurring within the Department.

12                   Sheriff Youngblood knew about, failed to curtail, and went so far as
                     to ratify and/or approve such inappropriate conduct – as was evident
13                   from (among other sources) his numerous promotions of
                     Undersheriff Brian Wheeler and Lieutenant Richard Garrett, some of
14                   the main perpetrators and participants with respect to the conduct at
                     issue.  Numerous employees throughout the Department and Kern
15                   County Counsel's Office knew about and/or were aware of these
                     incidents.  Chief Fleeman also learned that Sheriff Youngblood
16                   routinely reversed, eliminated, and/or diminished discipline imposed
                     upon deputies who engaged in inappropriate sexual behavior.  Chief
17                   Fleeman knew, perceived, and reasonably understood these incidents
                     and official responses to have negatively impacted employee morale.
18

19   (Doc. No. 35 at 33–34 (August 28, 2019 Government Tort Claim).)

20           The above-quoted tort claim also asserts that plaintiff was subject to an internal affairs

21   investigation in part because of statements that plaintiff made during the campaign about an

22   employee having a sexual relationship with another employee's spouse.  (*Id.* at 37.)  The internal

23   affairs investigation ultimately resulted in a finding that those statements amounted to an

24   improper disclosure of confidential information about an actual employee.  (*Id.*)  Plaintiff was

25   initially placed on administrative leave as a result of this internal affairs finding.  (*Id.* at 38.)  The

26   tort claim indicates that plaintiff was later terminated in part because of the allegedly improper

27   disclosure of confidential information.  (*Id.* at 40–41.)  The tort claim further asserts that the

28   stated reasons for his termination were "false and unsubstantiated" and that plaintiff was actually

                                                  6

1    terminated, at least in part, "for his general reference and expressed desire to put an end to sexual

2    impropriety and misconduct within the Department" (Doc. No. 35 at 41–42.)  The tort claim

3    eventually concluded, stating:  "Chief Fleeman was terminated for his general reference and

4    expressed desire to put an end to sexual impropriety and misconduct within the Department."  (*Id*.

5    at 41.)

6          All of the above clearly put the county on notice of the act (plaintiff's termination) and the

7    relevant circumstances surrounding that act, namely that plaintiff had recently shared with the

8    public his concerns about Sheriff's Department employees engaging in inappropriate sexual

9    conduct, including:  employees having extra-marital relationships with other employee's spouses,

10   employees maintaining sexual relationships with subordinates, and employees engaging in sexual

11   activity with members of the Sheriff's Activity League.[1]  The tort claim's allegation that plaintiff

12   made statements at campaign events regarding his plans to "put a stop to"[2] this kind of conduct

13   should have been sufficient to cause the County to investigate the circumstances surrounding

14   plaintiff's public disclosures, the nature of those disclosures, and the reasons for plaintiff's

15   eventual termination.  As plaintiff notes in his objections to the pending findings and

16   recommendations, County workplace policies "prohibit conduct such as engaging in sexual

17   activity while on duty and with Sherriff's Activities League participants." (Doc. No. 43 at 16.)[3]

18   A reasonable investigation into plaintiff's public statements regarding sexual misconduct in the

19   workplace therefore would naturally implicate County workplace behavior policies.  Relatedly,

20   when considered in the context of the entire tort claim, including the tort claim's assertion that

21   plaintiff was terminated for complaining about sexual misconduct in the workplace, the tort claim

---

[1]  Plaintiff explains in his objections that this is a program for at-risk youth; plaintiff concedes that this fact is not expressly alleged in his complaint.  (Doc. No. 43 at 16 n.2.)

[2]  The language used in the tort claim is indirect and somewhat vague.  For example, plaintiff's tort claim indicated that he campaigned on "put[ting] a stop to" inappropriate sexual conduct but does not indicate that plaintiff ever <u>directly</u> stated that such conduct was taking place. Nonetheless, a campaign to "put a stop to" a type of conduct necessarily implies that the speaker believes (or at least wants others to believe) that the conduct in question is actually taking place.

[3]  Defendants in fact appear to concede that engaging in certain kinds of consensual sexual relations while on duty may violate County workplace policies.  (*See* Doc. No. 11 at 21.)

7

1   also implicated § 232.5's protections against termination for disclosing information about

2   working conditions.  *See Lupo*, 242 F. Supp. 3d at 1031 (policies about "proper behavior" can

3   constitute "working conditions").[4]

4          As discussed below, these factual allegations do not—at least not without further detail—

5   state a claim under § 232.5 for purposes of Federal Rule of Civil Procedure 8 or 12.  Nonetheless,

6   although far from a model of directness, plaintiff's tort claim did give the county proper notice of

7   the factual basis of the claim plaintiff now seeks to advance.  That is enough to avoid dismissal on

8   the ground that the notice provided was insufficient under California Government Code § 910.

9                    *2.       Timeliness of the Tort Claim*

10          The court also departs from the findings and recommendations as to the timeliness of

11   plaintiff's tort claim.  Claims must be presented to the appropriate agency no later than six

12   months after the accrual of the cause of action, with accrual being determined by the accrual

13   jurisprudence applicable to the relevant statute of limitations.  Cal. Gov't Code § 911.2(a); *Shirk*

14   *v. Vista Unif. Sch. Dist.*, 42 Cal. 4th 201, 209 (2007), *superseded by statute on other grounds*,

15   *Rubenstein v. Doe No. 1*, 3 Cal. 5th 903, 907 (2017).  It is undisputed that plaintiff filed two tort

16   claims.  One was filed on February 28, 2021, after plaintiff was placed on administrative leave as

17   a result of the internal affairs investigation.  The county issued a letter formally rejecting that

18   claim on March 6, 2019 and indicated that plaintiff had six months from that date to file a court

19   action.  Plaintiff filed a second tort claim on August 28, 2019, shortly after he was terminated.

20   The County issued a letter formally rejecting the second tort claim on September 25, 2019, which

21   again indicated that plaintiff had six months to file a court action.  Citing *Sofranek v. County of*

22

23   [4]  In reply in support of its motion to dismiss, defendant makes the argument that even if the
sexual conduct discussed by plaintiff at campaign events did violate Sheriff's Department policy,
24   this does not transform the conduct into "workplace conditions."  (Doc. No. 39 at 3 ("If actions
are prohibited by the Department, they are the opposite of conditions 'determined by the
25   employer as a condition of employment.'") (emphasis in original).)  This overly simplistic
interpretation of the statute is unpersuasive and contrary to the caselaw.  A § 232.5 claim can be
26   premised upon an employer's failure to enforce workplace rules.  For example, the plaintiff in
*Chan v. Canadian Standards Ass'n*, No. SACV 19-2162-JVS (JDE), 2020 WL 2496174, at *3
27   (C.D. Cal. Mar. 16, 2020), stated a cognizable § 232.5 claim by alleging he was retaliated against
for complaining that his employer had asked him to ignore safety rules.
28

1    *Merced*, 146 Cal. App. 4th 1238 (2007), the findings and recommendations reasoned that because

2    wrongful termination is not an element of a § 232.5 claim, there was no legal defect in plaintiff's

3    first tort claim; therefore, a second tort claim was unnecessary and did not reset the six month

4    clock.

5            However, *Sofranek* concerned allegations that did not change materially from one tort

6    claim to the next.  Specifically, Sofranek complained that he was bypassed for promotion in favor

7    of another individual in violation of a rule that required promotions to be based upon merit and

8    length of service.  *Id*. at 1242–43.  His initial tort claim was sparse, mentioning that the defendant

9    failed to adhere to a particular county resolution when it bypassed him for promotion and instead

10   promoted a particular other person; and listing the financial harms that resulted from plaintiff

11   being bypassed for promotion.  *Id*. at 1242.  The plaintiff's second tort claim provided more detail

12   and expanded upon the policies and procedures that were allegedly violated by the promotional

13   decisions at issue.  *Id*. at 1243.  *Sofranek* filed his complaint in court within the six month period

14   following rejection of his second claim, but outside the six month period following rejection of

15   his first claim.  *Id*. at 1246–47.  The California Court of Appeals found that his lawsuit was

16   untimely because the second claim related to the same underlying facts as the first one and

17   "amount[ed] to no more than an attempt to amend the original claim," such that the amendment

18   related back to the date the original claim was filed.  *See id*. at 1247, 1250.

19           Although no party has briefed the issue, the statute of limitations applicable to plaintiff's

20   claim brought under § 232.5 appears to be the three year[5] statute of limitations provision

21   applicable to "[a]n action upon a liability created by statute, other than a penalty or forfeiture."

22   Cal. Code. Civ. Pro. § 338; *see also Horn v. Safeway Inc*., No. 19-CV-02488-JCS, 2021 WL

23   1817086, at *12 (N.D. Cal. May 6, 2021) (applying § 338 to claims for damages brought under

24   the California Labor Code).  That limitations provision generically provides that "[a]n action

25   upon a liability created by statute, other than a penalty or forfeiture" must be brought within three

26   years.  Cal. Code Civ Pro. § 338(a).  Section 338 does not articulate any specific accrual rule for

27   _____

28   [5]  To be clear, § 338 is not relevant here for its three-year deadline; rather it is the accrual rules
     that apply to § 338 that govern accrual for purposes of analyzing the timeliness of the tort claim.

1  cases, such as this one, involving a statutorily defined labor code violation.  Therefore, the

2  general accrual rule in California applies.  One way of articulating the general rule is the "last

3  element rule," where a claim accrues "'when [it] is complete with all of its elements'—those

4  elements being wrongdoing, harm, and causation."  *Pooshs v. Philip Morris USA, Inc.*, 51 Cal.

5  4th 788, 797 (2011) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)).

6      The findings and recommendations appear to align both with *Sofranek* and with this

7  articulation of the general accrual rule by concluding that plaintiff's § 232.5 claim accrued when

8  the claim <u>first</u> became complete with all of its elements.  (Doc. No. 41 at 23.)  In the context of

9  this case, that was when plaintiff was formally disciplined by being placed on leave.  The

10 magistrate judge reasoned that because termination is not a required element of a § 232.5 claim,

11 no filing of a new tort claim was required under *Sofranek*, so plaintiff's filing of one did not reset

12 the six month clock under § 910.  (*Id.*)

13     However, there is another viewpoint.  Plaintiff contends that the circumstances here are

14 distinct and more analogous to those presented in *Acuna v. San Diego gas & Electric Co.*, 217

15 Cal. App. 4th 1402, 1405–10 (2013).  There, an employee filed three separate complaints with the

16 Department of Fair Employment and Housing ("DFEH") as pre-requisites to maintaining a claim

17 under California's Fair Employment Housing Act ("FEHA").  These three complaints reflected a

18 changing landscape of allegedly wrongful acts against plaintiff.  The first, filed while plaintiff

19 was on disability leave, complained of "discriminat[ion] and harass[ment] because [plaintiff] was

20 an Hispanic female"; that this harassment increased after plaintiff filed a workers compensation

21 claim; and that she was retaliated against for protesting."  *Id.* at 1408.  The second claim, filed

22 after the plaintiff was cleared to return to work but her employer refused to reinstate her, asserted

23 the employer "engaged in disability discrimination and failed to provide reasonable

24 accommodation for her disability."  *Id.*  The third DFEH complaint was filed after plaintiff,

25 having made efforts to return to work, was terminated, and asserted discrimination, harassment,

26 and retaliation.  *Id.* at 1409–10.

27     The court in *Acuna* concluded that the complaint was timely filed because it was filed

28 "within one year of the date on which the claimed alleged unlawful employment practice

10

1  occurred (<u>termination</u> for retaliatory reasons)." *Id* at 1418 (emphasis added).  The court

2  explained:

3
4
5
6
7
8
9
10
> The California Supreme Court has held that the one-year period for filing a DFEH claim challenging a termination accrues at the time the employee is actually terminated.  (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal. 4th 479, 493 [ ].)  The *Romano* court explained that because the FEHA defines an improper " 'discharge' as among the statute's unlawful employment practices," and because the FEHA provides that DFEH complaints must be filed within one year from the date the "unlawful practice 'occurred,' " the limitations period for a claim alleging a termination in violation of FEHA begins to run at the time of the termination, even if the employee knew or should have known before that time that the employer was intending to terminate the employment for the alleged improper reasons.  (*Id*. at p. 497.)  The *Romano* court emphasized that because a termination date is within the employer's control, the employer is able to secure or retain evidence if a claim should arise.  (*Id*. at p. 500.)

11
12
13
14
> Under these principles, Acuna's third DFEH complaint alleging retaliatory termination was timely under section 12960 because she filed the claim less than four months after the termination.  SDG & E, not Acuna, selected the termination date and was in control of the trigger date for the accrual period.  At that time, SDG & E was on notice that it should secure and retain all evidence regarding the reasons for the termination.

15  *Id*. at 1418 (parallel citation omitted).

16      Like FEHA, § 232.5 lists discharge as a prohibited act.  *See* Cal. Lab. Code § 232.5(c).  At

17  first glance, FEHA's limitations period appears materially distinct from California Code of Civil

18  Procedure § 338, which is applicable here.  FEHA indicates that the limitations period begins to

19  run from the date the unlawful practice occurred.  *See* Cal. Gov't Code § 12960(e) (a complaint

20  alleging a violation of FEHA "shall not be filed pursuant to this article after the expiration of one

21  year from the date upon which the alleged unlawful practice or refusal to cooperate occurred").

22  As mentioned, § 338(a) generically provides that "[a]n action upon a liability created by statute,

23  other than a penalty or forfeiture" must be brought within three years.  Cal. Code Civ Pro.

24  § 338(a).  As also mentioned above, the "last element rule" provides generally that a claim

25  accrues " 'when [it] is complete with all of its elements'—those elements being wrongdoing,

26  harm, and causation."  *Pooshs* (quoting *Norgart*, 21 Cal. 4th at 397).  But in *Norgart*, the seminal

27  case announcing this rule, the court provided a somewhat more nuanced explanation:

28  /////

11

> The general rule for defining the accrual of a cause of action sets the date as the time "when, under the substantive law, *the wrongful act is done*," or the wrongful result occurs, and the consequent "liability arises...."

*Norgart*, 21 Cal. 4th at 397 (emphasis added).  This brings California's general accrual rule in line with FEHA's accrual rule as articulated in *Acuna*, which indicates that even where multiple wrongful employment acts may have taken place and earlier acts may have given rise to complete causes of action, a subsequent termination operates as a new wrongful act and a claim based upon that termination accrues on the date of the termination.  As a practical matter, this rule is clear and makes sense.[6]  Moreover, none of the cases cited by defendant directly undermine that proposition.

In light of the decision *Acuna*, the undersigned finds that the lawsuit was timely filed within six months of the second tort claim.[7]  Therefore, the court finds it unnecessary to address plaintiff's third cause of action for estoppel, the entire purpose of which is to preclude the County from arguing that his wrongful termination claim was not timely filed.  Plaintiff's third cause of action for estoppel is rendered moot by the above finding of timeliness.

### b.  Sufficiency of the Allegations in the Complaint

This leaves the question of whether plaintiff states a cognizable claim for wrongful termination under § 232.5.  As mentioned above, under § 232.5(c), an employer may not

---

[6]  For instance, what if an employee did not believe that being placed on leave was a significantly adverse action to warrant the filing of a tort claim but was then terminated seven months after being placed on leave.  Absent application of the principles announced in *Acuna,* the filing of a tort claim on the day after termination under this scenario would be untimely because it could be said that the employee's claim accrued when he was placed on leave.

[7]  In the context of an earlier motion to dismiss this action, the undersigned agreed with the magistrate judge that two retaliation claims asserted in the initial complaint should be dismissed for failure to timely comply with the tort claim presentation requirement of Cal. Gov't Code § 911.2.  That ruling was premised in part on the assumption that, under the claim for retaliation as then-pleaded, "termination would add to the adverse actions committed and be relevant as to damages." (Doc. No. 29 at 7.)  In the context of that round of briefing, plaintiff sought and was afforded leave to amend to clarify that he is seeking damages for his termination only and not for any adverse employment actions that occurred prior to his termination.  (*Id.* at 5.)  The currently operative complaint now directly raises the narrower issue of when a § 232.5 claim based solely on termination accrues.

1 "[d]ischarge, formally discipline, or otherwise discriminate against an employee who discloses

2 information about the employer's working conditions."  "Working conditions are those conditions

3 determined by the employer as a condition of employment."  *Lupo*, 242 F. Supp. 3d at 1031.

4 These may include such things as "proper behavior" or even a "required attitude."  *Id.*  A classic

5 example would be an employee who complains to superiors about workplace health and safety

6 concerns and is later discriminated against for being "overly concerned with compliance."  *See*

7 *Chan v. Canadian Standards Ass'n*, No. SACV 19-2162-JVS (JDE), 2020 WL 2496174, at *3

8 (C.D. Cal. Mar. 16, 2020).

9          The pending findings and recommendations correctly point out that the FAC does not

10 allege facts that, if proven, would be sufficient to establish that plaintiff disclosed information

11 pertaining to "working conditions" within the Sheriff's Department.  (Doc. No. 41 at 12.)

12 Although there is little to no authority defining pleading standards with respect to a § 232.5 claim,

13 in the somewhat analogous context of a wrongful discharge in violation of public policy claim, it

14 has been found that the plaintiff must, at a bare minimum, identify the public policy that was

15 allegedly violated.  *Lautiej v. Wal-Mart*, No. S-09-3315 FCD GGH PS, 2010 WL 3429643, at *5

16 (E.D. Cal. Aug. 30, 2010), *report and recommendation adopted*, No. CIVS093315 FCD GGH PS,

17 2010 WL 11700715 (E.D. Cal. Oct. 1, 2010); *Suhovy v. Sara Lee Corp*., No. 1:12-CV-01889-

18 LJO-GSA, 2014 WL 1400824, at *7 (E.D. Cal. Apr. 10, 2014).  In the context of § 232.5,

19 therefore, it would appear that the "workplace condition" at issue must be identified in the

20 allegations of the complaint.

21          Plaintiff's FAC does not point to a County policy governing the allegedly improper

22 employee behavior, nor does it detail to whom any alleged statements were made raising concerns

23 about this improper behavior.  As mentioned, plaintiff points out that defendant conceded in an

24 earlier round of motions practice that consensual sexual relations on duty "may" violate

25 departmental policy (Doc. No. 11 at 21), but this concession does not cure the FAC's failure to

26 connect plaintiff's allegations that "*potentially* illegal and inappropriate" sexual behavior was

27 "rampant" at the Sheriff's Department (Doc. No. 25 at ¶ 14) to a "working condition" that would

28 render his claim cognizable under § 232.5.  Plaintiff asserts that these defects can be cured by

13

1    amendment, an assertion that will be addressed by the court below.

2           Finally, the court will briefly comment on an issue discussed at length in the parties'

3    papers and the findings and recommendations.  Plaintiff frequently and repeatedly asserts that he

4    was speaking at his campaign events in "hypotheticals" about sexual misconduct and therefore

5    that the internal affairs investigation (which ultimately formed a foundation for his termination)

6    erred by concluding that he improperly disclosed confidential information about specific

7    employee's sexual misbehavior.  (*See id.* at ¶ 22.)  At the same time, plaintiff is alleging that he

8    *actually did* make disclosures about working conditions sufficient to trigger the protections

9    afforded him under § 232.5.  "While it is permissible for a plaintiff to plead legal theories in the

10   alternative, a plaintiff may not plead inconsistent facts."  *Buniatyan v. Volkswagen Grp. of Am.,*

11   *Inc.*, No. CV 16-336 PA (KSX), 2016 WL 6916824, at *5 (C.D. Cal. Apr. 25, 2016).

12   Nonetheless, given that pleadings must be read liberally, it is possible that plaintiff will be able to

13   walk the fine line between these two seemingly factually inconsistent positions in any amended

14   complaint he elects to file.

15                              **c.     NLRA Preemption**

16          The magistrate judge wisely avoided addressing the issue of whether plaintiff's § 232.5

17   claim is pre-empted by provisions of the NLRA, reasoning that, among other things, the nature of

18   plaintiff's § 232.5 claim remains unclear.  (Doc. No. 41 at 13–14.)  The findings and

19   recommendations provide a concise review of the applicable standards governing NLRA

20   preemption, which plaintiff should carefully consider before amending and defendants should do

21   so also before moving to dismiss any second amended complaint.

22                              **d.     Leave to Amend**

23          The findings and recommendations concluded that amendment appeared to be futile in

24   part because of the separate recommendation that plaintiff's tort claim be found untimely, a defect

25   that cannot normally be cured by amendment.  Because the undersigned departs from the findings

26   and recommendations on that ground in light of the decision in *Acuna*, it appears plausible that

27   the pleading defects identified above may be curable by way of amendment.  In addition, the

28   issue of  § 232.5 liability has not been discussed in any detail in the court's previous orders in this

                                            14

1    case. In an abundance of caution, the court will therefore afford plaintiff one last opportunity to

2    amend this claim in an attempt to cure the previously noted deficiencies.

**CONCLUSION**

4        For the reasons set forth above, the court adopts the July 9, 2021 (Doc. No. 41) findings

5    and recommendations in part and declines to adopt them in part as follows:

6       1.      Plaintiff's Bane Act claim is dismissed without leave to amend;

7       2.      The court finds that plaintiff's tort claims submitted to the County provided the

8    County with sufficient notice of the § 232.5 claim articulated in the FAC;

9       3.      The court finds that plaintiff's § 232.5 claim asserted in the FAC was timely filed

10    in light of the August 28, 2019 tort claim submitted to the County regarding plaintiff's

11    termination;

12       4.      Plaintiff's § 232.5 claim is nonetheless dismissed for failure to state a claim;

13       5.      Plaintiff is afforded one last opportunity to amend that claim consistent with this

14    order and the relevant authorities;

15       6.      Any amended complaint is due thirty (30) days from the date of this order.

16    IT IS SO ORDERED.

17    Dated:    **November 24, 2021**

18                               UNITED STATES DISTRICT JUDGE