1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  JUSTIN FLEEMAN,                          Case: 1:20-cv-00321-JLT-CDB

12              Plaintiff,                    ORDER GRANTING IN PART AND
                                             DENYING IN PART DEFENDANTS'
13        v.                                 MOTION TO DISMISS SECOND AMENDED
                                             COMPLAINT
14  COUNTY OF KERN, *a County of the*
    *State of California*, DONNY              (Doc. 49)
15  YOUNGBLOOD, RICHARD GARRETT,
    DUSTIN CONTRERAS, WILLIAM
16  DAVIS, DAVID A KESSLER, AND T.R.
    MERICKEL,
17
                Defendants.
18

19        Justin Fleeman was a Chief Deputy at the Kern County Sheriff's Department.  This case

20  arises out of his termination from the Department after losing his 2018 bid to be elected as the

21  Kern County Sheriff. Plaintiff alleges that his termination constitutes retaliation for his political

22  activities and for a speech he gave during his campaign.

23        This case presents a long, complicated procedural history that has bewildered the parties

24  regarding the controlling law going forward.  Pending is the motion to dismiss the second

25  amended complaint filed by the County of Kern, Donny Youngblood, Richard Garrett, Dustin

26  Contreras, William Davis, David Kessler, and T.R. Merickel's (collectively, "Defendants").

27  (Doc. 49.)  For the reasons set forth below, the Defendants' Motion to Dismiss (Doc. 49) is

28  **GRANTED IN PART** and **DENIED IN PART**.

                                            1

1    **I.    Factual Background**

2         For over twenty years, Fleeman served as Chief Deputy at the Kern County Sheriff's

3    Department.  (SAC, Doc. 47 at ¶ 12.)  Throughout his tenure, Plaintiff "had an exemplary record"

4    and received "numerous awards, honors[,] and/or commendations[.]"  (*Id.*)  In or around January

5    2018, Plaintiff notified Sheriff Youngblood, that he intended to enter the Sheriff's race in the

6    upcoming June 2018 election.  (*Id.* at ¶ 13.)  Youngblood allegedly responded "that he felt

7    'betrayed[]'" upon learning that Plaintiff intended to run against him.  (*Id.*)  The subsequent race

8    was contentious and gives rise to the present controversy.

9         **A.  The 2018 Campaign for Kern County Sheriff**

10        Plaintiff's campaign for Sheriff centered on a message "that, if elected, [he] would put a

11   stop to employees engaging in sexually inappropriate conduct[—]including extra-marital sexual

12   relationships with other Deputies' spouses, sexual relations with subordinates, engaging in sexual

13   relations while on duty, and engaging in inappropriate sexual relations with Sheriff's Activities

14   League participants."[1]  (Doc. 47 at ¶ 14.)  Plaintiff alleges that "[n]umerous Sheriff's Department

15   employees . . . previously engage[d] in such inappropriate sexual conduct on numerous

16   occasions," that this problem was "seemingly rampant, unbecoming, and potentially illegal," and

17   that in Plaintiff's view, this inappropriate sexual conduct constituted one of "the biggest

18   problems" facing the Department.  (*Id.*)

19        During the 2018 campaign, Plaintiff criticized Youngblood "for turning a blind eye to

20   such conduct" and for "failing to take adequate and appropriate action to deter such conduct."

21   (*Id.*)  Indeed, Plaintiff alleges that Youngblood ratified and approved this inappropriate conduct,

22   as illuminated in Youngblood's purported promotions of "the main perpetrators and participants"

23   of such sexual conduct, and Youngblood's alleged routine reversal, elimination, and/or

24   diminished discipline of deputies that had engaged in such conduct.  (*Id.* at ¶ 15.)

25        At some point during his campaign, Plaintiff represents that he made "hypothetical

26

27   [1] The Kern County Sheriff's Department operates the "Sheriff's Activities League," which is a "program for at-risk youth" that promotes developing local youth "into responsible, productive, and ethical citizens and reducing juvenile

28   victimization, crime, and delinquency."  (Doc. 47 at ¶ 74 (emphasis omitted).)

statements . . . while off-duty at a campaign event." (Doc. 47 at ¶ 22.)  At this event, Plaintiff maintains that he "was speaking in general about various unethical conduct within the Sheriff's Department and how, if elected, he would not tolerate it." (*Id.*)  Importantly, Plaintiff "provided a hypothetical in which a Sergeant slept with[,] or tried to sleep with[,] another Deputy's wife, was not disciplined, and was later promoted by the Sheriff to [the position of] Lieutenant." (*Id.*)  At this event, Plaintiff announced that if elected, he would not condone such conduct.  Plaintiff repeats that all statements made at this event were hypothetical. (*See id.*) Plaintiff surmises that he made statements akin to: "If I am elected Sheriff and you sleep with another deputy's wife, then you will be fired[.]" (*Id.* at ¶ 77 (emphasis omitted).)

On April 12, 2018, a local news channel interviewed Youngblood regarding the upcoming election. (Doc. 47 at ¶ 17.)  Plaintiff alleges that during this interview, Youngblood "intentionally mis[led] the public" after he stated that Plaintiff "was in charge of the Special Investigation Division (SID) Property Room when Logan August and Derrick Penney stole marijuana."[2] (*Id.*)  Plaintiff reports that the Department held an investigation regarding the stolen narcotics, and during this investigation, Youngblood promoted Plaintiff to the position of Chief Deputy. (*Id.*)

On April 21, 2018, *The Bakersfield Californian* newspaper interviewed Youngblood. (Doc. 47 at ¶ 18.)  During this interview, Youngblood allegedly commented that during Plaintiff's campaign event, Plaintiff "'possibly committed a misdemeanor' by talking about rumors" of inappropriate sexual misconduct allegations circulating throughout the Department. (*Id.*)  The newspaper published Youngblood's statements, which allegedly contained his comments that: (1) Plaintiff may be exposed to misdemeanor criminal charges because the law protects safety officers from public disclosure of their personal information; (2) Plaintiff's "aggressive approach" betrayed Youngblood's trust and called into question Plaintiff's fitness for office; (3) Plaintiff cannot be trusted to keep statements made during meetings confidential; (4) Plaintiff's "attacks sting"; and (5) Plaintiff's critiques of Youngblood are attacks on the whole Department. (*Id.* at ¶

---

[2] The Court is aware that these two deputies were investigated for having stolen narcotics held in the custody of the KCSO. (*See* Doc. 47 at ¶ 17 (mentioning Plaintiff's "alleged lapse in supervision relating to the stolen narcotics").)

19.) On June 5, 2018, Youngblood won re-election.  (*Id.* at ¶ 20.)

**B.  The Internal Affairs Investigation and Plaintiff's Subsequent Termination**

On June 6, 2018, *The Bakersfield Californian* newspaper published an article stating that Plaintiff lost the election, and that he is returning to work at the Department, which "'may not welcome him back with open arms.'"  (Doc. 47 at ¶ 20.)  On June 29, 2018, Youngblood notified Plaintiff that an Internal Affairs Investigation, led by outside counsel Karen Kramer, was investigating allegations that Plaintiff was "dishonest during his campaign" and "'disclosed confidential personnel information during [his] recent political campaign.'"  (*Id.* at ¶¶ 21, 23.)  These allegations stemmed from Plaintiff's earlier campaign event, and the statements he made about actions that he would take as Sheriff addressing sexual misconduct.  (*See supra* at 2–3; Doc. 47 at ¶ 22.)

On August 6, 2018, Commander Doug Jauch served Plaintiff with a "Stay Away Order" regarding Mr. Contreras—an employee within the Department who allegedly received leniency in a pending disciplinary action in exchange for making a "false complaint against Mr. Fleeman."  (Doc. 47 at ¶ 25 (capitalizations omitted).)  At a separate unidentified time, and for reasons Plaintiff failed to explain in his operative complaint, Defendant Garrett also filed an internal complaint against Plaintiff.  (*See id.* at ¶ 26.)  On September 18, 2018, based on Contreras and Garrett's complaints, Kramer's Internal Affairs Investigation concluded that Plaintiff "more likely than not disclosed confidential personnel information [regarding Garrett] during the course of his campaign for Sheriff."[3]  (*Id.*)  The report also documented that the accusations regarding Plaintiff's dishonesty during his campaign "were not sustained[.]"  (*Id.* at ¶ 27.)

On September 20, 2018, Youngblood delivered Plaintiff a "Notice of Administrative Leave/Revocation of Peace Officer Powers," predicated on the results of the Internal Affairs Investigation.  (*Id.* at ¶ 28.)  Thereafter, Plaintiff faced several consequences from his administrative leave: two news outlets contacted Plaintiff, inquiring about his leave, (*id.* at ¶¶ 29, 35); a news segment reported that Plaintiff was under investigation, (*id.* at ¶ 30); Plaintiff

---

[3] Kramer's report allegedly documented that Plaintiff never referred to Garrett by name during his campaign event.

discovered a "disparaging meme on the Channel 17 News Facebook page," which superimposed his face on the body of a sheep (*id.* at ¶ 32); Plaintiff discovered that a Sergeant in the County's Search and Rescue division had spread details to others regarding Plaintiff's leave (*id.* at ¶ 34); Plaintiff discovered Defendant Chief Deputy William "Tyson" Davis had tried to influence the Kern Law Enforcement Association not to endorse Plaintiff (*id.* at ¶ 36); and finally, in October 2018, Plaintiff discovered that the Kern County's County Counsel had disclosed to two media outlets that the County placed Plaintiff on paid administrative leave "based upon multiple complaints filed by Sheriff's Office employees." (*Id.* at ¶ 37.)

On March 5, 2019, Probation Division Director JJ Zahry served Plaintiff with a "Notice of Proposed Disciplinary Action – Termination." (*Id.* at ¶ 38.) This termination letter stated that (1) Plaintiff violated the County's hostile work environment policy after he disclosed confidential personnel information regarding Lieutenant Garrett, and (2) Plaintiff was dishonest. (*Id.*) Both allegations stemmed from Plaintiff's "hypothetical statements [made] during an off-duty campaign event that if a Sergeant were to sleep with another deputy's wife, and the Sheriff were to not discipline that person but rather promote him to Lieutenant, that would be unethical conduct," and that if elected to Sheriff, Plaintiff would not tolerate it. (*Id.*)

## II.   Procedural History

### A. First Administrative Claim

On February 28, 2019, Plaintiff filed a government claim with the County pursuant to the California Government Claims Act ("CGCA"),[4] Cal. Gov't Code §§ 810 *et seq.* (*See* Doc. 47 at ¶ 41; Ex. A, Doc. 47 at 22–31 (copy of First Claim).) In his First Administrative Claim, Plaintiff recited all pertinent facts as previously described above (*see supra* Section I), and specified his complaint against all Defendants:

> [F]or numerous counts of defamation, false light, invasion of
> privacy, unauthorized use of Chief Fleeman's name and likeness,
> retaliation for engaging in political activity in violation of Labor

---

[4] "Consistent with the California Supreme Court, [the Court] 'adopt[s] the practice of referring to the claims statutes as the 'Government Claims Act,' to avoid the confusion engendered by the informal short title 'Tort Claims Act.'" *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1124 n.6 (9th Cir. 2013) (quoting *Stockton v. Superior Ct.* (2007) 42 Cal.4th 730, 734).

1
2
3
4
5

> Code sections 1101 and 1102, whistleblower retaliation in violation of Labor Code section 1102.5, violations of Chief Fleeman's civil rights under Article I of the California Constitution, and violations of the Peace Officers' Bill of Rights Act (POBRA)." *Id.* at 25.  On March 6, 2019, the County's Office of the County Counsel, Risk Management Division, issued Plaintiff a "Notice of Action Taken on Claim" ("Notice"), providing Plaintiff with notice that "[t]he claim is deemed rejected on its merits.

6    (*See* Doc. 47 at ¶ 43.)  On March 6, 2019, the County issued Plaintiff a "Notice of Action Taken

7    on Claim" ("Notice"), notifying Plaintiff that "[t]he claim is deemed rejected on its merits."  (Ex.

8    B, Doc. 47 at 32.)  At the bottom of the Notice, the County admonished Plaintiff that he had "only

9    six (6) months from the date this notice was deposited in the mail to file a court action on this

10   claim.  (*See Gov. Code Section* 945.6.)"  (*Id.*)

11       At some unidentified date, Plaintiff participated in a Skelly hearing regarding his pending

12   termination.  (*Id.* at ¶ 38.)  On May 29, 2019, Plaintiff received his final "Notice of Disciplinary

13   Action – Termination," resulting in his immediate dismissal.  (*Id.*)

14   **B.  Second Administrative Claim**

15       After his termination, Plaintiff felt "it became necessary to file a second tort claim . . . to

16   take legal action over the termination of employment."  (Doc. 47 at ¶ 44.)  On August 28, 2019,

17   Plaintiff filed his Second Administrative Claim with the County pursuant to the CGCA.  (*Id.* at

18   ¶ 45; Ex. C, Doc. 47 at 34–46.)  In it, Plaintiff recounted nearly identical facts to his First

19   Administrative Claim, but added new allegations under California Government Code section

20   3201, "and retaliation for engaging in violation of Labor Code sections 96(k) and 98.6[.]"  (Ex. C,

21   Doc. 47 at 37.)  Additionally, Plaintiff added that he received his first March 5, 2019, "Notice of

22   Proposed Disciplinary Action – Termination" (*Id.* at 45.)  Plaintiff's Second Administrative

23   Claim concludes, in pertinent part:

24
25
26
27

> In sum, Chief Fleeman is, in fact, being fired because he ran against Sheriff Youngblood and lost.  The stated reasons for termination are false and unsubstantiated.  But even if true, the stated reasons are illegal on their face as the County admits that it is firing Chief Fleeman for engaging in speech during the course of a political campaign.

28

1  (*Id.* at 46.)

2  On September 25, 2019, the County issued a "Notice of Action Taken on his Claim"

3  ("Second Notice"), notifying him that it rejected his claim on its merits.  (Ex. D, Doc. 47 at 48.)

4  In the County's Second Notice, it provided the following admonishment, in relevant part: "Please

5  be advised that each claim set forth in your First Claim is applicable and related solely to your

6  First Claim.  All new issues/allegations/claims which are addressed in your Second Claim will be

7  applicable and related to your Second Claim."  (*Id.*)[5]

8  **C.  The County's Motion to Dismiss**

9  On February 28, 2020, Plaintiff filed his original complaint in this Court (Doc. 1),

10  bringing a First Amendment claim pursuant to 42 U.S.C. § 1983 against all Defendants, and as

11  against the County only, he alleged violations of:  (1) California Labor Code §§ 1101 and 1102

12  and California Government Code §§ 3201 *et seq.*; (2) California Labor Code § 1102.5; (3)

13  California Labor Code § 96(k); and (4) California Labor Code §§ 2699 *et seq.*  (*Id.* at 11–15.)  On

14  April 20, 2020, the County filed its first Motion to Dismiss Complaint ("First Motion to

15  Dismiss"), wherein it moved to dismiss Plaintiff's state law claims against it.  (*See* Doc. 11.)

16  1.  First Findings & Recommendations and Order Adopting[6]

17  In its First Motion to Dismiss, the County argued Plaintiff's Second Administrative Claim

18  merely amended his First Administrative Claim, and as a result, the CGCA's statute of limitations

19  began to run when the County delivered its Notice to Plaintiff denying his First Administrative

20

21  [5] In his operative complaint, Plaintiff also represents that he exhausted his administrative remedies before
22  the Kern County Personnel Department's Equal Employment Opportunity ("EEO") Officer, as prescribed
by Kern County Civil Service Commission Rule ("County Rule") 1820.00.  (Doc. 47 at ¶ 50; Ex. E, Doc.
47 at 51–61 (copy of EEO complaint).)  Plaintiff maintains, however, that the County's EEO Officer failed
23  to respond to his complaint, failed to investigate, and failed to issue findings of fact and recommendations
pursuant to County Rules 1820.01 and 1820.02.  (Doc. 47 at ¶ 52.)  The County has not addressed this
24  representation in its instant motion.  (*See generally* Doc. 49.)

25  [6] The Court summarizes Plaintiff's previous pleadings, Defendants' previous motions, and the Court's
previous rulings only as they pertain to the allegations contained in the Second Amended Complaint (Doc.
26  47), and Defendants' pending Motion to Dismiss (Doc. 49).  As Plaintiff now raises only two state law
claims—one cause of action under California Labor Code §§ 1101 and 1102 and California Government
27  Code §§ 3201 *et seq.*, and the second allegation brought pursuant to California Labor Code § 232.5—the
Court limits its recitation of this case's procedural history to these two instant claims.

28

1   Claim.  (Doc. 11 at 13–14.)  Plaintiff argued that because he was not terminated until after he

2   filed his First Administrative Claim, "his First Claim 'did not . . . and could not state a cause of

3   action for wrongful termination in violation of Labor Code sections 1101, 1102 . . . and/or

4   Government Code sections 3201 *et seq.* because a claim for wrongful termination [did] not accrue

5   until the actual date of termination – in this case, May 29, 2019.'"  (Doc. 23 at 13 (quoting Doc.

6   15 at 11).)

7          On February 19, 2021, the Court considered the County's First Motion to Dismiss and

8   recommended that Plaintiff's "Second Cause of Action for retaliation in violation of Cal. Lab.

9   [Code] §§ 1101, 1102 and Cal. Gov't Code § 3201 be dismissed without leave to amend[.]"  (Doc.

10   23 at 26 (emphasis omitted).)  The Court concluded that Plaintiff lawsuit was untimely because it

11   was filed beyond the deadline set forth in the CGCA.  (*See id.* at 12–15.)

12          The Court found, "The filing of a new tort claim was not required prior to Fleeman filing

13   suit against the County, because there was no legal defect" in the filing of his First Administrative

14   Claim, and therefore "the civil action should have been filed within six months of the denial of

15   the First Claim, or no later than September 6, 2019."  (Doc. 23 at 15.)  Therefore, the Court

16   recommended that the allegations brought under Labor Code sections 1101, 1102, and

17   Government Code 3201 be dismissed without leave to amend his complaint, because "this defect

18   cannot be cured."  (Doc. 23 at 26.)

19          The plaintiff objected (Doc. 25) and on March 31, 2021, District Judge Drozd issued an

20   Order Adopting in Full the Findings and Recommendations Granting Defendant's Motion to

21   Dismiss ("First Order Adopting").  (Doc. 29.)  Judge Drozd ordered that "Plaintiff's second cause

22   of action for retaliation is dismissed without leave to amend[.]"  (*Id.* at 11.)  Notably, Judge Drozd

23   considered that Plaintiff *could have* brought a wrongful termination theory under these provisions

24   of the Labor Code, stating:

25          "[P]laintiff's objections fail to acknowledge the fact that while a
        claim for wrongful termination did not arise until he was fired, his
26          claims as stated both in his tort claims and in the complaint filed in
        this action were for *retaliation* . . .  Because plaintiff's first tort
27          claim was sufficient to give the County notice of his claim for
        retaliation, any civil action for *retaliation* was required to be filed
28          within six months of the date the tort claim was denied.  On the

1
2
3
4

> other hand, any civil action for *wrongful termination*—raised for
> the first time in plaintiff's tort claim submitted in August 2019—
> was required to be filed within six months of the denial of
> plaintiff's second tort claim. . . .  Accordingly, the findings and
> recommendations recommending that plaintiff's retaliation claims
> be dismissed as untimely will be adopted and defendants' [sic]
> motion to dismiss the retaliation claims will be granted.

5   (*Id.* at 7 (emphases in original).)

6   **D.  Defendants' Second Motion to Dismiss**

7        On April 26, 2021, Plaintiff filed his First Amended Complaint, bringing three causes of

8   action: (1) a First Amendment violation pursuant to 42 U.S.C. § 1983 brought against all

9   Defendants; (2) a claim for wrongful termination pursuant to California Civil Code § 52.1 and

10  California Labor Code § 232.5, as against all Defendants; and (3) a claim for estoppel against the

11  County.  (Doc. 35 at 13–16.)  On May 26, 2021, all Defendants filed a joint Motion to Dismiss

12  First Amended Complaint ("Second Motion to Dismiss"), moving to dismiss both of Plaintiff's

13  state law claims.  (*See generally* Doc. 36.)

14              1.   Second Findings & Recommendations and Order Adopting

15       On June 25, 2021, the Court issued a second Findings and Recommendations,

16  recommending that the Defendants' motion to dismiss be granted and that "[t]he Second Cause of

17  Action for violations of Cal. Civ. Code § 52.1 and Cal. Lab. Code § 232[.]5[] be dismissed

18  without leave to amend[.]" (Doc. 41 at 26 (emphasis omitted).)

19       First, the Court recommended that Plaintiff's section 232.5 claim was untimely, stating:

20  "It is indisputable that Fleeman's peace officer powers were revoked, and he was placed on leave,

21  before his First Claim was submitted . . . Thus, his claim for a violation of Section 232.5 was ripe

22  at that time," and therefore his "Section 232.5 should have been filed within six months of the

23  denial of the First Claim, or not later than September 6, 2019."  (*Id.* at 23 (internal citations

24  omitted).)  Tangentially, the Court discussed that the continuing violations doctrine could not

25  apply to claims brought under section 232.5.  (*Id.* at 21–22.)

26       Second, the Court recommended that "[b]ecause Fleeman did not clearly identify

27  statements about his working conditions within the meaning of the Labor Code," neither his First

28  Administrative Claim nor his Second Administrative Claim properly placed the County on notice

9

1    that Plaintiff intended to bring a cause of action pursuant to section 232.5.  (*Id.* at 19.)

2            Finally, the Court recommended that even if Plaintiff's section 232.5 claim were timely

3    and provided the County with proper notice of his claim, the Court should dismiss his claim

4    because Plaintiff did not disclose "working conditions" within the meaning of section 232.5.  (*Id.*

5    at 11–13.)  Specifically, the undersigned stated, "the Court is unable to conclude Fleeman made

6    statements that touched on 'conditions determined by the employer *as a condition of*

7    *employment*.'"  (*Id.* at 12 (emphasis in original) (citation omitted).)  Accordingly, the Court

8    recommended dismissing Plaintiff's California Labor Code § 232.5 claim without leave to

9    amend.  (*Id.* at 26.)

10           On November 24, 2021, Judge Drozd issued an "Order Adopting in Part and Declining to

11   Adopt in Part the Findings and Recommendations Regarding Defendant's Motion to Dismiss"

12   ("Second Order Adopting" or "partial Order Adopting").  (Doc. 46.)  In his order, Judge Drozd

13   disagreed with the first and third conclusions regarding the proper notice and timeliness of

14   Plaintiff's two administrative claims raising a cause of action under section 232.5.  (*See id.* at 3–

15   12.)

16           Taking guidance from California's Fair Employment and Housing Act ("FEHA"), Cal.

17   Gov't Code §§ 12900 *et seq.*, Judge Drozd held, "even where multiple wrongful employment acts

18   may have taken place and earlier acts may have given rise to complete causes of action, a

19   subsequent termination operates as a new wrongful act and a claim based upon that termination

20   accrues on the date of the termination."  (*Id.* at 12.)  Accordingly, Judge Drozd concluded that

21   "[i]n light of the decision [in] *Acuna*, the undersigned finds that the lawsuit was timely filed

22   within six months of the second tort claim."  (*Id.* (footnote omitted) (referencing *Acuna v. San*

23   *Diego Gas & Elec. Co.*, 217 Cal. App. 4th 1402 (2013)).)

24           Nevertheless, Judge Drozd agreed that Plaintiff's First Amended Complaint failed to state

25   a claim under section 232.5 of the Labor Code.  (*Id.* at 12–14.)  Judge Drozd held that "Plaintiff's

26   [First Amended Complaint] does not point to a County policy governing the allegedly improper

27   employee behavior, nor does it detail to whom any alleged statements were made raising concerns

28   about this improper behavior."  (*Id.* at 13.)  Likewise, Judge Drozd noted that "'potentially illegal

and inappropriate' sexual behavior" is not a "'working condition' that would render [Plainitff's]

claim cognizable under § 232.5." (*Id.*)  Lastly, Judge Drozd noted that Plaintiff's First Amended

Complaint contained several inherently contradictory allegations, rendering his allegations

implausible, stating, "Plaintiff frequently and repeatedly asserts that he was speaking at his

campaign events in 'hypotheticals' about sexual misconduct . . . [yet] [a]t the same time, plaintiff

[] alleg[es] that he *actually did* make disclosures about working conditions sufficient to trigger"

section 232.5.  (*Id.* at 14 (emphasis in original).)

At the conclusion of his order, Judge Drozd granted Plaintiff leave to amend his

complaint.  (*Id.* at 14–15.)  There, Judge Drozd concluded:

> [I]t appears plausible that the pleading defects identified above may
> be curable by way of amendment.  In addition, the issue of § 232.5
> liability has not been discussed in any detail in the court's previous
> orders in this case.  In an abundance of caution, the court will
> therefore afford plaintiff one last opportunity to amend this claim in
> an attempt to cure the previously noted deficiencies.

*Id.*  Accordingly, the Court granted Plaintiff conditional leave to an amended complaint.  (*See id.*)

On December 23, 2021, Plaintiff filed his operative, Second Amended Complaint

### III.   Legal Standard

#### A.  Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a defendant may move to dismiss a claim in the plaintiff's

complaint if the allegation "fail[s] to state a claim upon which relief can be granted."  Fed. R.

Civ. P. 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint

"must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).  "At the pleading stage, all allegations of material fact are taken as

true and construed in the light most favorable to the non-moving party."  *In re Facebook, Inc.

Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020).  A claim is facially plausible "when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  As such, the plausibility

standard is a "context-specific task that requires the reviewing court to [1] draw on its judicial

1   experience and common sense," *Iqbal*, 556 U.S. at 679, and [2] to "'draw all reasonable

2   inferences in favor of the nonmoving party.'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir.

3   2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945

4   (9th Cir. 2014)).  "Ultimately, dismissal is proper under Rule 12(b)(6) if it appears beyond doubt

5   that the non-movant can prove no set of facts to support its claims." *Boquist*, 32 F.4th at 773–74

6   (internal citation and quotation marks omitted) (cleaned up).

7        Though resolution of a motion to dismiss under Rule 12(b)(6) is normally confined to the

8   allegations stated in the complaint, the court "may also 'consider [1] materials that are submitted

9   with and attached to the complaint'; [2] judicial notice of matters of public record'; and [3]

10  unattached evidence on which the complaint necessarily relies if:  [a] the complaint refers to the

11  document; [b] the document is central to the plaintiff's claim; and [c] no party questions the

12  authenticity of the document.'" *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross &*

13  *Blue Shield of Ill.*, 983 F.3d 435, 439 (9th Cir. 2020) (quoting *United States v. Corinthian Colls.*,

14  655 F.3d 984, 998–99 (9th Cir. 2011)).

15       **IV.**   **Discussion**

16        Plaintiff's Second Amended Complaint re-alleges the same three causes of action that he

17  brought in his first two previous complaints:  (1) as against all Defendants, a First Amendment

18  violation pursuant to 42 U.S.C. § 1983; (2) against the County alone, a wrongful termination

19  claim under California Labor Code §§ 1101 and 1102 and California Government Code §§ 3201

20  *et seq.*; and (3) also against the County alone, a wrongful termination claim under California

21  Labor Code § 232.5.  (Doc. 47 at 13–19.)  Defendants jointly move to dismiss only the two, state

22  law claims in Plaintiff's operative complaint.[7]  (*See* Doc. 49.)  As the parties' briefs

23  understandably appear confused regarding the applicable law and holdings regarding the

24  timeliness of Plaintiff's Complaint in relation to his administrative claims, the Court takes this

25  opportunity to address and reconsider the timeliness of Plaintiff's CGCA claims.

26          **A.  Timeliness of Plaintiff's CGCA Claims: Cal. Lab. Code §§ 1101, 1102;**

---

[7] The Court notes that Defendants jointly moved to dismiss Plaintiff's state law claims.  These causes of action, however, are brought against the County alone.  (Doc. 47 at 14, 16)

1             **Cal. Gov't Code §§ 3201 *et seq.***

2          Defendants move to dismiss Plaintiff's wrongful termination claim brought under

3 California Labor Code §§ 1101 and 1102 and Government Code §§ 3201 *et seq.* for two main

4 reasons.  (Doc. 49 at 4–8.)

5          First, Defendants maintain that "this Court has already ruled that plaintiff's claims brought

6 under these specific statutes are procedurally barred and they were dismissed without leave to

7 amend."  (*Id.* at 11 (citing Docs. 23, 29).)  Accordingly, Defendants contend that "Plaintiff should

8 not be permitted to resurrect claims dismissed with prejudice."  (*Id.* at 8.)  Second, however,

9 Defendants appear to argue that even if the Court reconsiders these dismissed claims, they are

10 "procedurally barred as untimely." (*Id.* at 11 (emphases omitted).)  In support of this untimeliness

11 argument, Defendants re-assert that Plaintiff's Second Administrative Claim "raised substantially

12 the same facts, and many of the same legal issues" as his First Administrative Claim (*id.*), and

13 that adding Plaintiff's wrongful termination claim to his Second Administrative Claim was not

14 necessary to bring a cause of action under these statutes.  (*Id.* at 7.)  Essentially, Defendants argue

15 that Plaintiff's Second Administrative Claim unnecessarily amended his First Administrative

16 Claim, such that Plaintiff filed his initial Complaint in this Court past the CGCA's prescribed six-

17 month statute of limitations.  (*Id.* at 4–8.)

18          Similarly, Defendants move to dismiss Plaintiff's third cause of action, brought under

19 California Labor Code § 232.5.  (*Id.* at 8–13.)  Defendants repeat that Plaintiff's section 232.5

20 claim is also barred as untimely because "[t]his state court cause of action does not require

21 termination as an element," and therefore Plaintiff did not need to wait until the County

22 terminated him before he could have properly brought a CGCA administrative claim under this

23 statute.  (*Id.* at 12.)  Therefore, Defendants maintain that here too, Plaintiff's Second

24 Administrative Claim unnecessarily amended his First Administrative Claim and argue that his

25 wrongful termination claim brought under this statute is untimely.  (*Id.*)  Alternatively,

26 Defendants request that "if [ ] plaintiff relies on the second tort claim to argue his 232.5 wrongful

27 termination is timely, then he should <u>only</u> be able to claim termination as an adverse action and

28 be precluded from raising the earlier alleged adverse actions raised in the first claim."  (*Id.*

1   (emphasis in original).)

2          In his Opposition, Plaintiff urges that Judge Drozd's Second Order Adopting (Doc. 46)

3   should control this Court's decision regarding the timeliness of Plaintiff's §§ 1101 and 1102

4   claim.  (Doc. 55 at 14–17.)[8]  Addressing the timeliness of Plaintiff's Complaint, Judge Drozd held

5   that the "general accrual rule in California applies" to § 232.5, meaning Plaintiff's administrative

6   claims did not become "complete" until the last element of his § 232.5 claim (termination)

7   occurred.  (Doc. 46 at 9–10.)  Therefore, relying on *Acuna v. San Diego Gas & Electric Co.*, 217

8   Cal.App.4th 1402 (2013), Judge Drozd held that Plaintiff's Second Administrative Claim started

9   a new clock for the statute of limitations to run, such that Plaintiff timely filed his federal

10  Complaint in this Court in compliance with the CGCA's six-month deadline.  (*Id.* at 10–11, 12

11  ("[A] subsequent termination operates as a new wrongful act and a claim based upon that

12  termination accrues on the date of the termination.").)

13         Plaintiff's Opposition urges the Court to adopt Judge Drozd's analysis regarding the

14  timeliness of his section 232.5 claim to the timeliness of his claims brought pursuant to Labor

15  Code §§ 1101 and 1102.  (Doc. 55 at 14–17.)  Moreover, Plaintiff contends that this Court's

16  earlier rulings regarding §§ 1101 and 1102 only dismissed without leave to amend his claim

17  under these statutes for *retaliation*, not wrongful termination, and therefore the Court never

18  previously ruled on his new claim.  (*Id.* at 16–17.)  Thus, in Plaintiff's view, "the Court's order

19  finding Plaintiff's *wrongful termination* claims timely [under section 232.5] (Dkt. 46) controls

20  over the Court's order dismissing Plaintiff's broader *retaliation* claims as untimely.  (Dkt. 26)."

21  (*Id.* at 17 (emphases in original).)  Finally, Plaintiff once more argues that Defendants are

22  equitably estopped from claiming either Labor Code cause of action is untimely.  (*Id.* at 17–20.)

23  In its Reply, Defendants repeat that Plaintiff's claims are procedurally barred, and assert that this

24  Court should analyze the timeliness of Plaintiff's Complaint pursuant to Judge Drozd's First

25  Order Adopting.  (Doc. 57 at 3–4.)

26         The parties' briefs, understandably, highlight their confusion regarding which order

27  ───────────────────────────
    [8] The Court cites to the PDF page numbers of Plaintiff's Opposition rather than the page numbers at the
28  bottom of his brief.

14

1   provides the correct law regarding the timeliness of Plaintiff's section 232.5 claim.  On the one

2   hand, the First Order Adopting affirmed that Plaintiff's claims brought pursuant to Labor Code

3   §§ 1101 and 1102, and Government Code § 3201, were untimely because Plaintiff's Second

4   Administrative Claim unnecessarily amended his First Administrative Claim.  (Doc. 29.)  On the

5   other hand, the Second Order Adopting held the opposite: that Plaintiff timely filed his § 232.5

6   claim, and that the Second Administrative Claim did not amend his First Administrative Claim

7   because Plaintiff's wrongful termination cause of action did not accrue until the County explicitly

8   terminated him.  (Doc. 46.)

9        There being a noted conflict between this Court's previous rulings regarding the

10   timeliness of Plaintiff's Complaint, the Court takes this opportunity to reconcile the conflicting

11   Orders Adopting and clarify the law applicable to the CGCA's statute of limitations.

12                    1.   The Law of the Case Doctrine

13        "The law-of-the-case doctrine generally provides that 'when a court decides upon a rule of

14   law, that decision should continue to govern the same issues in subsequent stages in the same

15   case.'"  *Musacchio v. United States*, 577 U.S. 237, 244 (2016) (quoting *Pepper v. United States*,

16   562 U.S. 476, 506 (2011)).  "The doctrine 'expresses the practice of courts generally to refuse to

17   reopen what has been decided,' but it does not 'limit [courts'] power.'"  *Id.* (quoting *Messenger v.*

18   *Anderson*, 225 U.S. 436, 444 (1912)); *see also United States v. Alexander*, 106 F.3d 874, 876 (9th

19   Cir. 1997) ("The doctrine is not a limitation on a tribunal's power, but rather a guide to

20   discretion.") (citation omitted); *Ferreira v. Borja*, 93 F.3d 671, 674 (9th Cir. 1996) ("Of course,

21   the law of the case is not a doctrine of inescapable application.").  Thus, "[t]he law of the case

22   doctrine does not preclude a court from reassessing its own legal rulings in the same case," and

23   does not "bar a court from reconsidering its own orders before judgment is entered or the court is

24   otherwise divested of jurisdiction."  *Askins v. U.S. Dep't of Homeland Sec'y*, 899 F.3d 1035, 1042

25   (9th Cir. 2018) (citations omitted).

26        Still, a prior decision should be followed unless "(1) the decision is clearly erroneous and

27   its enforcement would work a manifest injustice, (2) intervening controlling authority makes

28   reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent

1  trial." *Grand Canyon Tr. v. Provencio*, 26 F.4th 815, 821 (9th Cir. 2022) (internal quotation

2  marks and citation omitted).  These exceptions make sense, particularly in light of the fact that a

3  district court may properly reconsider a prior order in the same case under the same three

4  circumstances pursuant to Federal Rule of Civil Procedure 54(b).  *See Smith v. Clark Cnty. Sch.*

5  *Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (outlining the same three instances for when a court may

6  reconsider its prior rulings).  In this way, both Rule 54(b) and the law-of-the-case doctrine work

7  in tandem to allow the Court to correct clear errors in its previous rulings.  *See id.*; *Provencio*, 26

8  F.4th at 821.  A court commits clear error when it is "left with the definite and firm conviction

9  that a mistake has been committed."  *Smith*, 727 F.3d at 955 (internal quotation marks and

10  citation omitted).  Given the noted conflict between this Court's previous rulings regarding the

11  timeliness of Plaintiff's Complaint, the court takes this opportunity to reconcile the conflicting

12  Orders and clarify the law applicable to Plaintiff's claims.

13      Under the CGCA, "no suit for money or damages may be brought against a public entity,"

14  such as the County of Kern, Cal. Gov't Code § 811.2 (defining counties as public entities), "on a

15  cause of action for which a claim is required to be presented . . . until a written claim therefor has

16  been presented to the public entity and has been acted upon by the board, or has been deemed to

17  have been rejected by the board[.]" Cal. Gov't Code § 945.4.  There are two relevant deadlines

18  that are necessary to assessing the present timeliness inquiry.

19      First, for personal injury and property claims, a plaintiff must present his claim to the

20  appropriate agency "not later than six months after the accrual of the cause of action."  *Id.*

21  § 911.2.  "A claim relating to any other cause of action shall be presented . . . not later than one

22  year after the *accrual of the cause of action*."  *See id.* (emphasis added).  The board has forty-five

23  days to either grant or deny the claimant's application.  *Id.* § 911.6.  While a claimant is awaiting

24  the agency's decision on his claim, or after the agency has decided his claim, he may amend his

25  claim as allowed under § 910.6.  California Government Code § 910.6(a) prescribes, "[a] claim

26  may be amended at any time before the [six-month or one-year] expiration of the period

27  designated in Section 911.2 or before final action thereon is taken by the board, *whichever is*

28  *later*, if the claim as amended relates to the same transaction or occurrence which gave rise to the

original claim." *Id.* § 910.6(a) (emphasis added).  However, once a claimant amends his claim, "[t]he amendment shall be considered a part of the original claim for all purposes." *Id.*

The second deadline begins once the agency provides the claimant with written notice of its rejection of his claim.  *Id.* § 945.6(a).  In this situation, after the agency has denied the applicant's claim, he has six months after the date the denial notice "is personally delivered or deposited in the mail" to initiate a lawsuit in state or federal court.  *Id.* § (a)(1).  It is well-established that this six-moth deadline "is mandatory and must be strictly complied with." *Julian v. City of San Diego*, 183 Cal.App.3d 169, 176 (1986).

A complication arises when an agency denies an applicant's claim, and then the applicant subsequently suffers a new injury or "cause of action" based on substantially identical facts as his previously denied claim, and therefore files a second claim.  In this situation, the Court is confronted with the question of whether the claimant's new, second injury is merely an amendment to his first claim—such that it is "considered a part of the original claim for all purposes," including relating back to the six-month statute of limitations to initiate his lawsuit— or whether this second claim is a new claim and new cause of action in its own right, thereby re-setting the six-month statute of limitations to file his lawsuit.  Resolution of this question requires close examination of the claimant's proffered second injury in relation to the factual context and circumstances of his first claim.  Thus, the Court concludes that the First Order Adopting properly held that Plaintiff's Second Administrative Claim for retaliation merely amended his First Administrative Claim, while his Second Administrative Claim for wrongful termination served as a new injury, properly raised to bring a wrongful termination claim.

### 2. Timeliness of Amended CGCA Claims

"It has been held that where a second claim relates to the same underlying facts and 'amounts to no more than an attempt to amend the original claim,' the amendment relates back to the date the original claim was filed and therefore the six-month statute of limitations begins to run from the date the first claim was rejected." *Sofranek v. Cnty. of Merced*, 146 Cal.App.4th

1238, 1247 (2007) (quoting *Julian*, 183 Cal.App.3d at 173–76).[9]

For example, in *Sofranek*, a correctional sergeant in the Merced County Sheriff's Office expressed interest in applying for a vacant position as "commander in the corrections division." *Sofranek*, 146 Cal.App.4th at 1241–42.  The sheriff's office failed to promote Sofranek for this position and hired a different correctional sergeant.  *Id.* at 1242.  On February 17, 2004, Sofranek filed his first administrative claim with the County pursuant to the CGCA, stating "the date of the accident, incident or loss was January 26, 2004, and [he then] described the accident" thereafter. *Id.*  The County rejected his claim, and on July 21, 2004, Sofranek filed his second administrative claim.  *Id.* at 1243.  In his second claim, he again "stated the accident, incident or loss commenced on January 26, 2004," and "[i]nstead of the brief description of the incident contained in the first claim, this claim incorporated a five-page attachment which explained in more detail the facts underlying Sofranek's claim and the theories on which it was based."  *Id.* There, the court held that Sofranek's second claim amended his first claim because his second claim merely "added more details about the [same] incident and his attempts to appeal the promotion, but these facts were not necessary because a claim need only set forth the fundamental facts giving rise to the plaintiff's injury."  *Id.* at 1249 (citation omitted).  The court continued that, "as the second claim related to *the same occurrence* described in the first claim, namely Thoreson's promotion to commander, and, as Sofranek describes it, merely 'explain[ed] how respondent violated its Personnel Ordinance[,]' the second claim amended the first."  *Id.* at 1250 (brackets in original) (emphasis added).

*Sofranek* based its analysis, in part, on *Julian v. City of San Diego*, 183 Cal.App.3d 169 (1986).  There, Donald Julian received several burns to one-third of his body when he fell into a fire ring on a beach that contained live coals.  *Id.* at 171.  On June 20, 1984, Julian filed his first

---

[9] Where the California Supreme Court has yet to specifically address the issue, as is the case here, the Court is "'obligated to follow the decisions of [California's] intermediate appellate courts' unless there is 'convincing evidence that the [California] supreme court would decide differently.'"  *Bliss Sequoia Ins. & Risk Advisors, Inc. v. Allied Prop. & Cas. Ins. Co.*, 52 F.4th 417, 419 (9th Cir. 2022) (quoting *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007)).  Given the dearth of California case law regarding this timeliness scenario, the Court relies on the decisions of the California Courts of Appeal to resolve the instant legal question.  *Id.*

administrative claim with the City of San Diego for his personal injuries, where he alleged that the fire ring "was in a deteriorated condition," and brought forth several negligence theories against the City and its employees. *Id.* at 171–72.  On August 3, 1984, Julian received notice that the City's failure to respond to his claim had resulted in its denial. *Id.* at 172.  On March 5, 1985, Julian attempted to present a late second claim for damages for his injuries sustained from the April 1984 accident, only in this second claim, he presented the names of the City personnel he alleged were responsible, as well as "substantially identical facts as the first claim denied by the City." *Id.*  There, the court held that Julian's second claim amended his first claim because he alleged "substantially identical" facts to his first claim, alleged the same basis of liability, and instead, "[t]he only significant difference [between the two claims] [was] the substitution of names of the public employees in the later claim[.]" *Id.* at 175–76.

Thus, a claimant amends his first claim when his second claim (1) alleges "substantially identical facts" as his first claim, (2) adds unnecessary details about the same event(s) giving rise to his first claim, and (3) fails to allege a separate basis of liability. *Sofranek*, 146 Cal.App.4th at 1247–49 (holding that plaintiff's second claim amended his first claim because his "first claim was proper and a new claim was not a necessary predicate to filing a lawsuit.") (citation omitted); *Julian*, 183 Cal.App.3d at 175 ("Scrutiny of the claim submitted to the City and the proposed late claim shows the basis of potential liability is the same in each . . . No separate basis of liability is remotely suggested by either of Donald's claims.").[10]  Importantly, this claim amendment must occur before the expiration of § 911.2's applicable deadline.  Cal. Gov't Code § 910.6; *Schmitz v. Asman*, No. 2:20-cv-00195-JAM-CKD PS, 2020 WL 6728226, at *16 (E.D. Cal. Nov. 16, 2020) (citing Cal. Gov't Code § 910.6), *F. & R. adopted*, 2020 WL 7624963 (E.D. Cal. Dec. 22, 2020).  The filing of a second, amended administrative claim does not re-set the statute of limitations.

---

[10]  For further support explaining when a second claim amends the first claim, *see also D.R. v. Contra Costa Cnty. CA*, No. 19-cv-07152-MMC, 2020 WL 5526604, at *3–*4 (N.D. Cal. Sept. 15, 2020) (holding second claim amended first claim because it merely "included additional factual allegations in support of the wrongful death claim" presented in the first claim); *Solomon v. City of S. Lake Tahoe*, No. 2:13-cv-0115-GEB-DAD, 2013 WL 2192294, at *4 (E.D. Cal. May 20, 2013) (holding second administrative claim amended first claim when both claims were based on the same injury occurring on the same date, and the claimant merely amended his claim to allow the City to reassess its claim).

1 | *Sofranek*, 146 Cal.App.4th at 1247, 1250; *Julian*, 183 Cal.App.3d at 176.

2 |    Alternatively, a claimant's second administrative claim will re-set the statute of

3 | limitations when it is *not* an amendment of his first claim, but rather, raises a new "cause of

4 | action" brought forth under California Government Code § 945.4, so long as it is raised within

5 | one year of its accrual.  Cal. Gov't Code § 911.2.  A second, new claim tends to "involve[] factual

6 | and legal issues separate and independent of the original claim[] and thus it does not constitute an

7 | amended claim."  *Janis v. Cal. State Lottery Comm'n*, 68 Cal.App.4th 824, 833 (1998) (holding

8 | second administrative claim was new because the original claim "centered on the allegation that

9 | [the California State Lottery Commission] deceived and misled the public by promoting an illegal

10 | game," while the second claim was "unrelated to the [first] claim," and alleged that the

11 | Commission "breached a duty to return 50 percent of Keno proceeds to the public as prizes."); *see*

12 | *also Jadwin v. Cnty. of Kern*, No. 1:07-cv-00026-OWW-DLB, 2009 WL 926844, at *17 (E.D.

13 | Cal. Apr. 3, 2009) ("The retaliatory acts that occurred months *after* Plaintiff's Claim did not 'give

14 | rise to [his] original claim.' Subsequent retaliation under the Health & Safety Code and the Labor

15 | Code is not the same 'transaction or occurrence' that gave rise to the original claim.") (emphasis

16 | in original).

17 |    To determine whether a second claim states a separate "cause of action" under § 945.4,

18 | the Court must analyze a claim under California's "primary rights theory."  *Stockett v. Ass'n of*

19 | *Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal.4th 441, 447 n.3 (2004); *Frazier v. City of*

20 | *Fresno*, No. 1:20-cv-01069-ADA-SAB, 2023 WL 4108322, at *31 (E.D. Cal. June 21, 2023).

21 | Essentially, "the primary right is simply the plaintiff's right to be free from the particular *injury*

22 | suffered . . . It must therefore be distinguished from the *legal theory* on which liability for that

23 | injury is premised: 'Even where there are multiple legal theories upon which recovery might be

24 | predicated, one injury gives rise to only claim for relief.'"  *Crowley v. Katleman*, 8 Cal.4th 666,

25 | 681–82 (1994) (first emphasis added, second emphasis in original) (internal citations omitted).

26 | An employer's termination of an employee presents a new, separate injury, and therefore a new,

27 | separate cause of action under § 945.4.  *Stockett*, 34 Cal.4th at 448 (unlawful termination

28 | constitutes one, separate "wrongful act"); *Frazier*, 2023 WL 4108322, at *31 ("[L]ike wrongful

1  termination in <u>Stockett</u>, breach of contract is generally its own cause of action . . ."); *see also*

2  *Conway v. City of Palm Desert*, No. 5:21-cv-01144-SPG-SP, 2023 WL 5505869, at *3 (C.D. Cal.

3  Apr. 17, 2023) (acknowledging primary "right to continued employment" in *res judicata*

4  context); *Eaton v. Siemens*, No. 2:07-cv-00315-MCE-CKD, 2012 WL 1669680, at *6 (E.D. Cal.

5  May 11, 2012) (noting that wrongful termination implicates the primary "right to employment" in

6  *res judicata* context).[11]

7                                    3.   Plaintiff's Two Administrative Claims

8          Turning to Plaintiff's First Administrative Claim, filed on February 22, 2019, he

9  complains about the events at the Sheriff's Department that occurred between January 2018—at

10  the start of his 2018 election campaign—and approximately October 2018, after the County

11  placed him on administrative leave.  (Ex. A, Doc. 47 at 22–30.)  Although Plaintiff did not

12  explicitly describe all events between October 2018 and the filing of his claim in February 2019,

13  he properly included them in his last paragraph of his claim.  *See id.* at 30 (filed in February 2019:

14  "*Since that time*, Chief Fleeman has discovered that Chief Deputy William Tyson Davis colluded

15  with Dustin 'Vidal' Contreras by telling Contreras to make false and misleading accusations

16  against Chief Fleeman . . .") (emphasis added).  This First Administrative Claim included the

17  following allegations against the County:

18         [N]umerous counts of defamation, false light, invasion of privacy,
          unauthorized use of Chief Fleeman's name and likeness, retaliation
19         for engaging in political activity in violation of Labor Code sections
          1101 and 1102, whistleblower retaliation in violation of Labor
20         Code section 1102.5, violations of Chief Fleeman's civil rights
          under Article I of the California Constitution, and violations of
21         Peace Officers' Bill of Rights Act (POBRA).

22        [11] Under FEHA, there is a difference between the primary right to continued employment and the primary
   right to be free from discrimination:
23

24         [C]ase law recognizes two distinct rights or interests at stake when a civil
          service employee challenges discipline or termination on discriminatory
25         or retaliatory grounds.  The primary right protected by the state civil
          service system is the right to continued employment, while the primary
26         right protected by FEHA is the right to be free from invidious
          discrimination and from retaliation for opposing discrimination.

27  *George v. Cal. Unemp. Ins. Appeals Bd.*, 179 Cal.App.4th 11475, 1483 (2009) (*res judicata* context
   addressing FEHA administrative remedies).
28

                            21

1  (*Id.* at 25.)

2  On March 5, 2019, the County delivered Plaintiff its first termination letter.  (Doc. 47 at

3  ¶ 38.)  Then, on March 6, 2019, the County sent written notice to Plaintiff denying his First

4  Administrative Claim.  (Ex. B, *id.* at 31–33.)  On May 29, 2019, the County sent Plaintiff its final

5  termination notice, immediately terminating his employment with the County.  (*Id.* at ¶ 38.)  On

6  August 28, 2019, Plaintiff filed his Second Administrative Claim.  (Ex. C, *id.* at 34–46.)

7  This Second Administrative Claim recounted and complained of the *same exact events* as

8  his First Administrative Claim, between January 2018 and February 2019.  (*See id.* at 37–44.)

9  However, after Plaintiff filed his First Administrative Claim, the County formally terminated

10  Plaintiff's employment, constituting a new injury, and therefore a new cause of action.  (*Id.* at

11  44.)  Accordingly, Plaintiff's Second Administrative Claim brought forth additional allegations

12  from "February or March 2019," including that, "[o]n March 5, 2019, Chief Probation Officer

13  T.R. Merickel served Chief Fleeman with a Notice of Proposed Disciplinary Action –

14  Termination."  (*Id.*)  Plaintiff's final paragraph in his Second Administrative Claim evidently

15  states a new allegation that is absent from his First Administrative Claim:

16  
17  
18  
19  
20
> In sum, Chief Fleeman is, in fact, being fired because he ran against Sheriff Youngblood and lost.  The stated reasons for termination are false and unsubstantiated.  But even if true, the stated reasons are illegal on their face as the County admits that it is firing Chief Fleeman for engaging in speech during the course of a political campaign.  Furthermore, all of the allegations against Chief Fleeman occurred while he was off duty and not in [a] County owned building.

21  (*Id.* at 46.)

22  Once more, pursuant to California's "primary rights theory" defining a cause of action,

23  Plaintiff's termination constitutes a new, separate injury, and therefore a new cause of action.

24  *Stockett*, 34 Cal.4th at 447 n.3, 448; *Crowley*, 8 Cal.4th at 681–82; *Frazier*, 2023 WL 4108322, at

25  *31.  This new cause of action re-sets the statute of limitations under section 945.4.  Cal. Gov't

26  Code §945.4 ("[N]o suit for money or damages may be brought against a public entity ***on a cause***

27  ***of action*** for which a claim is required to be presented . . . until a written claim therefor has been

28  presented to the public entity and has been acted upon by the board, or has been deemed to have

1    been rejected by the board[.]") (emphasis added).  Here, however, there is an overlap of events

2    and injuries between Plaintiff's two administrative claims.  The Court therefore bifurcates his

3    administrative claims as follows.

4            Plaintiff's Second Administrative Complaint contains substantially identical factual and

5    legal allegations as his First Administrative Complaint, recounting events and injuries that

6    occurred between January 2018 and approximately February 2019.  (Ex. C, Doc. 47 at 34–44;

7    *compare, e.g.*, Ex. A, Doc. 47 at 26 ("Shortly thereafter, on June 29, 2018, Sheriff Youngblood

8    issued a letter to Chief Fleeman notifying Fleeman of a pending internal affairs investigation 'into

9    allegations [Chief Fleeman] disclosed confidential personnel information during [his] recent

10   political campaign for Sheriff of Kern County.") *with* Ex. C, Doc. 47 at 39 ("Within weeks, on

11   June 29, 2018, Sheriff Youngblood issued a letter to Chief Fleeman notifying Fleeman of a

12   pending Internal Affairs investigation . . .").)  The only noticeable difference between the two

13   administrative claims for this is the addition of minor details.  For example, Plaintiff's Second

14   Administrative Claim includes: (1) an additional paragraph about his "campaign messages . . .

15   [to] put a stop to employees engaging in sexually inappropriate conduct" (Ex. C, Doc. 47 at 37);

16   (2) an additional paragraph that Sheriff Youngblood "knew about, failed to curtail, and went so

17   far as to ratify" such conduct (*id.* at 38); and (3) an additional paragraph that in March 2018,

18   Sheriff Youngblood met with KLEA members to seek their endorsement for his campaign (*id.*).

19   For all other paragraphs contained in his Second Administrative Complaint, Plaintiff merely

20   provides more details about each event in this time.  (*See generally* Ex. C, Doc. 47 at 34–44.)

21           Accordingly, for the recitation of facts and the alleged legal liability stemming from each

22   event that took place between January 2018 and "February or March 2019" (*id.* at 44), the Court

23   determines these allegations in Plaintiff's Second Administrative Claim (1) contain substantially

24   identical facts as his First Administrative Claim, (2) add unnecessary details regarding the same

25   events giving rise to his First Administrative Claim, and (3) do not establish separate bases for

26   liability against the County.  *See Sofranek*, 146 Cal.App.4th at 1247–49; *Julian*, 183 Cal.App.3d

27   at 175; *see also Contra Costa Cnty.*, 2020 WL 5526604, at *3–*4; *Solomon*, 2013 WL 2192294,

28   at *4.  Therefore, these events arise out of the same "transaction[s] or occurrence[s]" as Plaintiff's

First Claim, meaning his Second Administrative Claim amended his First Administrative Claim, and is therefore "considered a part of the original claim for all purposes." Cal. Gov't Code § 910.6(a). Because the County denied Plaintiff's First Claim on March 6, 2019, (Ex. B, Doc. 47 at 32), and Plaintiff initiated this lawsuit almost one year later, on February 28, 2020 (Doc. 1), all claims arising out of the injuries Plaintiff incurred in his First Administrative Claim, and restated in his Second Administrative Claim, are untimely. Cal. Gov't Code § 945.6(a)(1) (requiring a claimant to file suit "not later than six months after the date such notice is personally delivered or deposited in the mail.").

However, Plaintiff timely initiated this lawsuit within six months of the County's denial of his Second Administrative Claim on September 25, 2019. (Ex. D, Doc. 47 at 47–48.) And, Plaintiff's Second Claim contains new factual and legal bases for liability accruing from his new injury—termination—which occurred on March 5, 2019. (Ex. C, Doc. 47 at 44–45.) All legal theories arising out of Plaintiff's alleged wrongful termination injury are therefore timely.[12] In light of this, the Court will now reconcile its two previous rulings.

### 4.  Previous Rulings

Addressing Plaintiff's original Complaint, the Court applied section 910.6(a)'s "transaction or occurrence" test and held that Plaintiff's Second Administrative Claim unnecessarily amended his First Administrative Claim because a claim for retaliation does not require termination as an element. (*See* Docs. 23, 29.) While this is true, the Court did not address that Plaintiff had stated a new *injury* according to California's "primary rights theory," and therefore, a new cause of action. *Stockett* 34 Cal.4th at 447 n.3, 448; *Janis*, 68 Cal.App.4th at 833; *Frazier*, 2023 WL 4108322, at *31; *Jadwin*, 2009 WL 926844, at *17.

However, as the Court previously discussed above, all factual allegations and injuries arising out of Plaintiff's First Administrative Claim between January 2018 and February/March

---

[12] The Court notes that it is persuaded that the language of the CGCA has adopted the continuous accrual theory, "in which a new cause of action accrues each time a wrongful act occurs, triggering a new limitations period." *Willis v. City of Carlsbad* 48 Cal.App.5th 1104, 1114 n.7 (2020) (citation omitted); *see* Cal. Gov't Code § 911.2 ("A claim relating to any other cause of action shall be presented . . . not later than one year *after the accrual of the cause of action*.") (emphasis added).

24

1   2019 are barred as untimely.  This includes Plaintiff's original Second Cause of Action for

2   "Retaliation for Political Activity," brought pursuant to California Labor Code §§ 1101 and 1102,

3   and California Government Code §§ 3201 *et seq.*  (Doc. 1 at 13; *see also* Ex. A, Doc. 47 at 25

4   (stating in his First Claim as a premise for liability, "retaliation for engaging in political activity

5   in violation of Labor Code sections 1101 and 1102").)  Plaintiff's alleged injuries stemming from

6   this claim had already occurred by the time he filed his First Administrative Claim.  Plaintiff is

7   not afforded a "second bite of the apple" and may not re-allege this retaliation claim in the

8   amended portion of his Second Administrative Claim.  Accordingly, though the Court's first

9   rulings focused on the type of *legal theory* raised in Plaintiff's tort claims rather than the type of

10  injuries he incurred, this is of no import.  Plaintiff's retaliation claims contained in his First

11  Administrative Claim are barred as untimely.  Therefore, for alternative reasons, the Court

12  correctly granted the County's first Motion to Dismiss.  (Docs. 23, 29.)

13         Turning to the Court's second ruling, Judge Drozd correctly decided Defendants' second

14  Motion to Dismiss in his Second Order Adopting (Doc. 46.)  There, Judge Drozd implicitly

15  recognized that Plaintiff's wrongful termination injury presented a new, separate cause of action.

16  Accordingly, Judge Drozd determined that "a subsequent termination operates as a new wrongful

17  act and a claim based upon that termination accrues on the date of the termination."  (*Id.* at 12.)

18  Generally, "a cause of action accrues when [it] is complete with all of its elements—those

19  elements being wrongdoing, harm, and causation. . . This is the 'last element' accrual rule:

20  ordinarily, the statute of limitations runs from the occurrence of the last element essential to the

21  cause of action."  *Aryeh v. Canon Bus. Sols., Inc.* 55 Cal.4th 1185, 1191 (2013) (internal

22  quotation marks and citations omitted).  Accordingly, Judge Drozd correctly concluded that

23  Plaintiff's wrongful termination claim(s) accrued after the County formally terminated him.

24         Because the Court determines that Plaintiff timely brought his wrongful termination

25  claims, there is no need to address his arguments relating to equitable estoppel.  (*See* Doc. 55 at

26  14 ("Defendants are estopped from contending any claims alleging wrongful termination . . . are

27  time barred[.]") (emphasis omitted).)  Defendants do not move to dismiss Plaintiff's Second

28  Cause of Action under California Labor Code §§ 1101 and 1102, and California Government

25

1    Code §§ 3201 *et seq.* for failure to state a claim according to the *merits* of each statute;

2    Defendants' sole arguments pertained to the timeliness of the action.  (Doc. 49).  As Plaintiff's

3    Second Cause of Action arises out of his alleged wrongful termination injury, he has timely

4    alleged this claim.[13]  Accordingly, the Court **DENIES** Defendants' Motion to Dismiss (Doc. 49)

5    Plaintiff's Second Cause of Action brought under these statutes.

6                          **B.  Cal. Lab. Code § 232.5**

7         Plaintiff's Third Cause of Action states a claim for "wrongful termination for disclosure of

8    working conditions," brought under California Labor Code § 232.5.  (Doc. 47 at 16 (emphasis

9    omitted).)  California Labor Code § 232.5 mandates:

10                  No employer may do any of the following:

11                  (a) Require, as a condition of employment, that an employee refrain
                        from disclosing information about the employer's working
12                      conditions.

13                  . . .

14                  (c) Discharge, formally discipline, or otherwise discriminate
                        against an employee who discloses information about the
15                      employer's working conditions.

16   Cal. Lab. Code §§ 232.5(a), (c).  Defendants move to dismiss this claim for Plaintiff's failure to

17   allege "working conditions" within the meaning of the Act.

18        Judge Drozd determined that Plaintiff failed to state a claim under section 232.5, stating,

19   in pertinent part:

20                  The pending findings and recommendations correctly point out that

21

22   _____

     [13] Under Federal Rule of Civil Procedure 15(c), an amended pleading "made after the statute of limitations
     has run 'relates back to the date of the original pleading,'" thereby avoiding the CGCA's time bar, "when
23   the amendment asserts a claim that arose out of the same conduct, transaction, or occurrence set out—or
     attempted to be set out—in the original pleading."  *Walden v. Shinn*, 990 F.3d 1183, 1202 (9th Cir. 2021)
24   (cleaned up) (quoting Fed. R. Civ. P. 15(c)(1)(B)); *id.* ("To satisfy Rule 15(c)'s relation-back standard, the
     proposed claims and the 'original' claims must be 'tied to a common core of operative facts.'") (quoting
25   *Hebner v. McGrath*, 543 F.3d 1133, 1138 (9th Cir. 2008)).

26   Thus, Plaintiff's Second Amended Complaint easily relates back to his timely filed original Complaint, as
     his operative pleading contains nearly identical allegations as his first Complaint, all complaining about
27   the events arising out of the 2018 election and his subsequent termination.  (*Compare* Doc. 1 *with* Doc 47.)
     Accordingly, Plaintiff has satisfied the CGCA's statute of limitations as it pertains to raising theories of
28   liability related to his wrongful termination injury.

                                          26

the FAC does not allege facts that, if proven, would be sufficient to establish that plaintiff disclosed information pertaining to 'working conditions' within the Sheriff's Department.  (Doc. No. 41 at 12.) Although there is little to no authority defining pleading standards with respect to a § 232.5 claim, in the somewhat analogous context of a wrongful discharge in violation of public policy claim, it has been found that the plaintiff must, at a bare minimum, identify the public policy that was allegedly violated . . . In the context of § 232.5, therefore, it would appear that the 'workplace condition' at issue must be identified in the allegations of the complaint.

Plaintiff's FAC does not point to a County policy governing the allegedly improper employee behavior, nor does it detail to whom any alleged statements were made raising concerns about this improper behavior.

. . .

Finally. . . Plaintiff frequently and repeatedly asserts that he was speaking at his campaign events in 'hypotheticals' about sexual misconduct and therefore that the internal affairs investigation . . . erred by concluding that he improperly disclosed confidential information about specific employee's sexual misbehavior. . . At the same time, plaintiff is alleging that he *actually did* make disclosures about working conditions[.]

(Doc. 46 at 13–14 (internal citations omitted) (emphasis added).) Judge Drozd concluded, "it is possible that plaintiff will be able to walk the fine line between these two seemingly factually inconsistent positions in any amended complaint he elects to file." (*Id.* at 14.)  Accordingly, "[i]n an abundance of caution," the Court granted Plaintiff "one last opportunity to amend this [section 232.5] claim in an attempt to cure the previously noted deficiencies." (*Id.* at 15.)

### 1.  Internal Factual Inconsistencies

Plaintiff's operative Complaint *still* contains internal factual inconsistencies, as alleged in his several "hypothetical" statements.  In no less than nine places of his operative Complaint, Plaintiff represents that his alleged "disclosures" of the sexually inappropriate conduct taking place in the Sheriff's Department were all merely "hypothetical statements." (*See* Doc. 47 at ¶¶ 22, 26, 38, 77) In paragraph 77, Plaintiff represents:

Mr. Fleeman's opposition to the above-described conduct was couched in hypothetical statements (e.g. If I am elected Sheriff and you sleep with another deputy's wife, then you will be fired).  Mr. Fleeman never named names [n]or identified the individuals within the Sheriff's Department who were engaging in the misconduct he opposed.    Nevertheless,  the  County  of  Kern  interpreted  these hypothetical statements as factual disclosures involving a specific employee . . . and fired Mr. Fleeman for allegedly disclosing [his] confidential law enforcement personnel information and for alleged

1
2
3

> dishonesty. . . . Thus, Defendant, the County of Kern, terminated Mr. Fleeman's employment because he disclosed working conditions within the Sheriff's Department during the course of his campaign for Sheriff.

4

(Emphasis omitted.)

5

    The Federal Rules of Civil Procedure allow parties to plead inconsistent factual

6

allegations in the alternative. Fed. R. Civ. P. 8(d)(2). However, Rule 8(d)'s liberality "has its

7

limits." *Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*, 252 F. App'x 123, 126 (9th

8

Cir. 2007). For example, "[a] pleader may assert contradictory statements of fact only when

9

legitimately in doubt about the facts in question." *Id.* (internal quotation marks and citation

10

omitted). Otherwise, when a plaintiff alleges inconsistent factual allegations throughout his

11

Complaint, this does not constitute pleading in the alternative, but rather a judicial admission.

12

*Maloney v. Scottsdale Ins. Co.*, 256 F. App'x 29, 31–32 (9th Cir. 2007); *Am. Title Ins. Co. v.*

13

*Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial

14

orders, unless amended, are considered judicial admissions conclusively binding on the party who

15

made them . . . A statement in a complaint, answer or pretrial order is a judicial admission[.]");

16

*see also Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859–60 (9th Cir. 1995) ("The district court is

17

correct that a statement in a complaint may serve as a judicial admission.") (citations omitted).

18

Such inconsistencies "may cancel each other out and render the claim subject to dismissal for

19

failure to state a claim." *Hartford Cas. Ins. Co. v. Am. Dairy & Food Consulting Lab'ys, Inc.*,

20

No. 09-cv-00914-OWW-DLB, 2009 WL 4269603, at *12 (E.D. Cal. Nov. 25, 2009) (citation

omitted).

21

    In other words, Plaintiff cannot have it both ways. Labor Code § 232.5 only protects

22

employees who make actual disclosures of information about their employer's working

23

conditions. Cal. Lab. Code §§ 232.5(a), (c). In construing and applying this statute, the Court is

24

confined to the "plain and commonsense meaning" of the statute's language.[14] *People v. Braden*,

25

26
27
28

---

[14] "In interpreting a state statute, [the Court] must follow the state's rules of statutory interpretation, here California." *Killgore v. SpecPro Prof. Servs., LLC*, 51 F.4th 973, 983 (9th Cir. 2022) (citation omitted). The Court therefore applies California's rules of statutory construction, as prescribed by the California Supreme Court.

14 Cal.5th 791, 804 (2023) ("We first examine the statutory language, giving it a plain and commonsense meaning . . . If the language is clear, courts must generally follow its plain meaning") (internal quotation marks and citations omitted); *Lopez v. Sony Elecs., Inc.*, 5 Cal.5th 627, 634 (2018) ("If the statutory language is clear and unambiguous our inquiry ends . . . In that case, the plain meaning of the statue is controlling") (internal quotation marks and citations omitted).

The text of § 232.5 is clear:  the Labor Code does not afford protection to employees who disclose "hypothetical" working conditions.  Plaintiff has the initial burden to show that *he* disclosed actual working conditions, *not* that the County believed his hypotheticals to be fact.  *See Iqbal*, 556 U.S. at 678.  Statements such as "[i]f I am elected Sheriff and you sleep with another deputy's wife, then you will be fired" cannot plausibly amount to a disclosure of anything, let alone a working condition.  (Doc. 47 at ¶ 77; *see also infra* (defining "working conditions").)  The repeated representations that Plaintiff made "hypothetical statements," constitute judicial admissions that he did not disclose any actual, factual "conditions" that occurred in the Department.  *Maloney*, 256 F. App'x at 31–32; *Lacelaw Corp.*, 861 F.2d at 226.  This alone renders his claim implausible.  *Hartford Cas. Ins*, 2009 WL 4269603, at *12.

### 2.  "Working Conditions"

Finally, the Court agrees with Defendants that his statements regarding sexually inappropriate conduct by employees of the Sheriff's Department still do not constitute his "working conditions" within the meaning of the statute.  Indeed, Judge Drozd already made this determination based on Plaintiff's First Amended Complaint (Doc. 35), which raises substantially identical factual allegations as his Second Amended Complaint (Doc. 47).

Plaintiff's operative Complaint identifies several Kern County Sheriff's Office policies, which he believes several employees within the Department violated.  (*See* Doc. 47 at ¶¶ 75, 76.)  However, the Court cannot find any support in the plain language of § 232.5 for Judge Drozd's suggestion that a plaintiff must proffer *policies* that state such working conditions.  (Doc. 46 at 13)  Instead, the salient point is that Plaintiff's operative Complaint simply does not plausibly state a claim that he disclosed "working conditions."  Once more, the focus of the Court's analysis is

1    limited to Plaintiff's allegations of *his own alleged disclosures—not* the Department's policies

2    that he believes employees violated by engaging in sexually inappropriate activity.  (Doc. 47 at

3    ¶ 22.)

4           The Court cannot plausibly infer that Plaintiff's remarks regarding the sexually

5    inappropriate activity allegedly taking place by Kern County's Sheriff's Department employees

6    amount to "working conditions" within the meaning of the statute.  Nowhere in Plaintiff's

7    Complaint does he state that he witnessed this conduct on-the-job or that it somehow bore on his

8    or others' work environment.[15] The absence of such allegations is fatal to his claim.  Accordingly,

9    Plaintiff has failed to plausibly state a claim for wrongful termination under Labor Code § 232.5.

10   Defendants' Motion to Dismiss (Doc. 49) Plaintiff's California Labor Code § 232.5 is

11   **GRANTED**.

12                          **C.  Leave to Amend**

13          Lastly, the Court will determine whether it should afford Plaintiff leave to amend his

14   Complaint for a third time.  Courts have broad discretion to grant leave to amend a complaint.

15   *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020).  In determining whether a plaintiff

16   should be granted leave to amend, courts consider "the presence or absence of undue delay, bad

17   faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue

18   prejudice to the opposing party and futility of the proposed amendment."  *Kroessler v. CVS*

19   *Health Corp.*, 977 F.3d 803, 814–15 (9th Cir. 2020) (internal quotation marks and citation

20   omitted).  "[W]here the plaintiff has previously been granted leave to amend and has

21   subsequently failed to add the requisite particularity to its claims, the district court's discretion to

22   deny leave to amend is particularly broad."  *Nguyen*, 962 F.3d at 420 (district court did not err in

23   denying leave to amend "because it was clear that the plaintiff had made her best case and had

24   _____

25   [15] Clearly, not being the object of your spouse's romantic desire and working with the person who *was* the
     object of your spouse's desire, would be terribly distressing. However, Plaintiff fails to bridge the gap with
26   factual allegations of how this off-the-job immorality constitutes a working condition.  Though Plaintiff
     concludes that some employees within the Sheriff's Department "engag[ed] in sexual relations while on
27   duty," (Doc. 47 at ¶ 74), he does not allege any facts suggesting how prevalent this conduct was, whether
     he or others were aware of this conduct at the time or how this conduct constituted or bore on his or
28   others' "working conditions."

1  been found wanting") (internal quotation marks and citation omitted).

2        Plaintiff requests that if the motion to dismiss is granted, then further leave to amend also

3  be granted.  (Doc. 55 at 26.)  Importantly, the Court has twice granted Plaintiff leave to amend his

4  pleadings.  When granting leave to amend the section 232.5 claim, the Court indicated Plaintiff

5  was being given "*one last opportunity* to amend this claim in an attempt to cure the previously

6  noted deficiencies."  (Doc. 46 at 14 (emphasis added).)  However, the claim in his operative

7  Complaint suffers the same deficiencies previously identified by the Court.  Therefore, the Court

8  concludes that future leave to amend would be futile.  *See, e.g., Zucco Partners, LLC v. Digimarc*

9  *Corp.*, 552 F.3d 981, 1008 (9th Cir. 2009) ("repeated failure to cure deficiencies" constitutes "a

10  strong indication that the [plaintiff] has no additional facts to plead" and "that any attempt to

11  amend would be futile"); *Nguyen*, 962 F.3d at 420 (district court did not err in denying leave to

12  amend "because it was clear that the plaintiff had made her best case and had been found

13  wanting").

14  **CONCLUSION**

15        Based upon the foregoing, the Court **ORDERS**:

16      (1)     Defendants' Motion to Dismiss (Doc. 49) is **GRANTED IN PART**.

17      (2)     The motion to dismiss Plaintiff's Second Cause of Action for Wrongful

18            Termination is **DENIED**.

19      (3)     Plaintiff's Third Cause of Action for Wrongful Termination for Disclosure of

20            Working Conditions, brought under California Labor Code § 232.5 is

21            **DISMISSED WITH PREJUDICE**.

22      (4)     Plaintiff's request for further leave to amend (Doc. 55 at 26) is **DENIED**.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

31

(5)   The action **SHALL** proceed on Plaintiff's First and Second Causes of Action—for violation of the First Amendment pursuant to 42 U.S.C. § 1983 and wrongful termination, brought under Cal. Labor Code §§ 1101 and 1102, and Cal. Gov't Code §§ 3201, *et seq.*—as stated in the Second Amended Complaint.

IT IS SO ORDERED.

Dated:   __**December 2, 2023**__

_____
UNITED STATES DISTRICT JUDGE